[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 12, 2011
JOHN LEY
CLERK

_____

No. 09-14322

_____

D. C. Docket No. 04-01335-CV-VEH-TMP

JEFFERY LYNN BORDEN,

Petitioner-Appellant,

versus

RICHARD F. ALLEN,
Commissioner Alabama Department of
Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 12, 2011)

Before TJOFLAT, WILSON and BLACK, Circuit Judges.

TJOFLAT, Circuit Judge:

Jeffery Lynn Borden is a death row inmate in the Alabama prison system; he was convicted of capital murder in the Circuit Court of Jefferson County, Alabama, in September 1995. He seeks a writ of habeas corpus vacating his death sentence on the ground that his attorneys rendered ineffective assistance of counsel during the penalty phase of his murder trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution.[1] To obtain the writ, Borden must establish that the decision of the Alabama Court of Criminal Appeals denying his ineffective assistance of counsel claims "(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The United States District Court for the Northern District of Alabama held that it was not and denied the writ. After reviewing the record that was before the Court of Criminal Appeals and

_____

[1] The Sixth Amendment, which has been made applicable to the States, see Gideon v. Wainwright, 372 U.S. 335, 345, 83 S. Ct. 792, 797, 9 L. Ed. 2d 799 (1963), states, in pertinent part, "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence," U.S. Const. amend. VI. The "Assistance of Counsel" means the "effective" assistance of counsel. See, e.g., Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Borden contends that his death sentence should be vacated on additional grounds, but those grounds are not cited in the certificate of appealability, which limits the issues to be considered in this appeal. See 28 U.S.C. § 2253(c)(2), (3); Diaz v. Sec'y for Dep't of Corr., 362 F.3d 698, 702 (11th Cir. 2004) (citing Murray v. United States, 145 F.3d 1249, 1250–51 (11th Cir. 1998) (per curiam)).

2

considering the arguments of the parties' counsel—both in their briefs to this court

and in oral argument—we conclude that Borden has established neither point. We

explain why Borden is not entitled habeas corpus relief after recounting the facts

that led to his conviction and the reasons why the Court of Criminal Appeals

rejected his claim that his attorneys' performance in the penalty phase of his trial

was constitutionally deficient.

I.

On December 24, 1993, Cheryl Borden and her father, Roland Dean Harris,

were murdered during a family holiday gathering. The facts relating to the crime

are not in material dispute:

> The evidence tended to show that on Christmas Eve of 1993, there was a large family gathering at the home of Juanita and Roland Harris in Gardendale. At around 6:45 p.m., [Borden], who was married to but legally separated from the Harris's daughter, Cheryl Borden, arrived at the Harris's residence with his and Cheryl's three children. The children, who had continued to live with their mother in Gardendale after her separation from [Borden], had spent the previous week visiting [Borden] in Huntsville—where [Borden] was then residing. [Borden] was to return the children to Gardendale in time to spend Christmas with their mother. When the children arrived at their grandparents' house, their grandfather, Roland Harris, came outside to help unload their clothes and Christmas gifts from [Borden]'s car. Shortly thereafter, the children's mother, Cheryl Borden, arrived at her parents' house and began to help her children move some of their things from [Borden]'s car to her car. In front of the children, [Borden] then took out [a] .380 caliber semiautomatic pistol and shot Cheryl Borden in the back of her head. Cheryl fell to the ground. Her father, Roland Harris, who was also present in the front yard, began to run toward the front door of the house yelling for someone to

3

telephone 911.  [Borden] chased Harris and fired several shots toward him and in the direction of the house.  Harris made it into the house as [Borden] continued to shoot at him from the yard.  One of the bullets fired from [Borden]'s gun struck and shattered a glass storm door at the front entrance of the house.  Once inside the house, Harris collapsed on the floor.  At some point during the shooting, a bullet had struck Harris in his back.  As [Borden] shot at Harris, the three children ran through the garage of the residence and came into the house through a back entrance, screaming that their father had shot their mother and that she was dead.  Several other family members were inside the house during the incident and scrambled to take cover from the gunfire.

Cheryl Borden and her father, Roland Harris, were transported to a local hospital, where they died later that evening.  [Borden] was arrested and charged with their murders.

The pistol used in the shooting incident was recovered at the crime scene.  Testimony at trial indicated that the pistol held a total of eight rounds of ammunition and that when it was recovered, it contained one unfired cartridge.  There was evidence that at least some of the bullets fired by [Borden] entered the living area of the house.

Borden v. State, 711 So. 2d 498, 500–01 (Ala. Crim. App. 1997) (footnote

omitted).

A.

On May 6, 1994, a Jefferson County grand jury returned an indictment

charging Borden with two counts of capital murder for the deaths of Cheryl Borden

and Roland Harris.  Count I of the indictment charged Borden with the capital

offense of "[m]urder wherein two or more persons are murdered by the defendant

by one act or pursuant to one scheme or course of conduct."  Ala. Code § 13A-5-

40(a)(10).  Count II charged Borden with the capital offense of "[m]urder

4

committed by or through the use of a deadly weapon fired or otherwise used from outside a dwelling while the victim is in a dwelling." Id. § 13A-5-40(a)(16).

Judge Michael W. McCormick presided over the jury trial in the Circuit Court of Jefferson County, and Borden was represented by two court-appointed attorneys, J. Massey Relfe, Jr., and Michael Shores,[2] both of Birmingham, Alabama. Following voir dire and jury selection, the trial began on September 12, 1995.

At the guilt phase of the trial[3] Borden pled the affirmative defense of not guilty by reason of mental disease or defect.[4] Borden's counsel sought to shift the focus away from the facts of the crime to Borden's mental capacity from the

___

[2] Though both attorneys were present throughout the entire trial, Shores handled the guilt phase, while Relfe handled the penalty phase.

[3] While we ultimately focus on Borden's counsel's performance surrounding the penalty phase of his trial, we discuss extensively the arguments and evidence presented at the guilt phase because that evidence was incorporated by reference during the penalty phase.

[4] Alabama law provides:

(a) It is an affirmative defense to a prosecution for any crime that, at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

(b) "Severe mental disease or defect" does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

(c) The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

Ala. Code § 13A-3-1.

outset. In his opening statement, defense counsel conceded that "[t]here's not going to be a whole lot of dispute about the underlying facts in this case" and quickly turned the jury's attention to a watershed event in Borden's life: a severe 1977 automobile accident in which he suffered closed-head trauma and that left him comatose for four days. Continuing, counsel discussed Borden's "bizarre behavior patterns" as "what the doctors, I think, would call depressive patterns with psychotic features that culminated in 1981 with a suicide attempt when Jeff was rehospitalized." Counsel walked the jury through Borden's storied mental health history, replete with hospitalizations, suicide attempts, and medications designed to address mental health issues. He culminated this history by stating, "Over the course of this time that we've just talked about Jeff has been hospitalized a total of eight times particularly for mental problems. . . . He's placed on seven different medications . . . ." Importantly, counsel indicated that the jury would hear from several witnesses, including Borden's mother and expert medical witnesses who had evaluated Borden, and that the jury would be able to examine medical records to "find out what the doctors were saying then about Jeff's mental problems."

Following the close of the State's case in chief,[5] the defense first called

---

[5] The State did not present any evidence regarding Borden's mental health during its case in chief.

Borden's mother, Eloise Borden ("Mrs. Borden"), to the stand. Mrs. Borden testified that as a child and young man Borden did not experience any problems that were "out of the ordinary," save "some depression" following his brother's death in 1971—when Borden was eleven years old. Defense counsel then shifted his attention to Borden's 1977 automobile accident. Mrs. Borden testified that her son was unconscious for four days following the accident, and that once he regained consciousness he was "not aware of everything that was going on around him." Apparently seeking to establish the accident as a turning point for Borden's psychological profile, counsel asked Mrs. Borden about Borden's behavioral changes following the accident. Mrs. Borden noted a change in sleep patterns as well as depression, stating that "[h]e was just, you know, a different—total change."

Mrs. Borden further testified that her son's psychological problems reached such a point that she and her husband took him to a hospital in 1981, at which point he was diagnosed as "severely depressed" and placed on "a bunch of" medication. She spoke further of injuries Borden suffered throughout the 1980s, one of which ultimately required neck surgery in November 1992. When asked if Borden was "exhibiting any or beginning to exhibit any other bizarre behaviors," Mrs. Borden replied, "He was seeing things that weren't there. People were after him. They were after his family to hurt them." She discussed his twelve-day

7

placement in a "secure facility" in July 1992 at Brookwood Hospital under the supervision of a Dr. L. E. Shehi, and his return to that facility in October of the same year. She spoke of his re-hospitalization—this time in Tennessee—after "he overdosed again" by taking 250 extra-strength Tylenol and 100 ibuprofen. Moreover, Mrs. Borden told the jury that Borden had been subjected to nine "shock treatments" at the Centennial Medical Center in the summer of 1993.[6]

On cross-examination, the State focused on Borden's spotty work record. Most importantly for our analysis, the prosecutor asked Mrs. Borden whether "the medical doctor who knows the most about Jeff, who saw him most frequently [from late 1992 until late 1993] is Dr. Shehi; is that right?" She answered affirmatively.

The defense next called Dr. J. Wesley Libb, a clinical psychologist working at the University of Alabama at Birmingham in the Department of Psychiatry. Dr. Libb was "primarily involved in psychological assessment of in-patients within the Center for Psychiatric Medicine." While he had never evaluated or treated Borden prior to the murders of Cheryl Borden and Roland Harris, he later administered a "neuro-psychological battery of tests" as well as "general[] psychological testing."

---

[6] Mrs. Borden's testimony covered a wider range of topics than just Borden's psychological history, but as our focus is on Borden's ineffective assistance of counsel claim based on counsel's failure to investigate and present mitigating mental health evidence at the penalty phase, we decline to discuss her testimony in its entirety. Likewise, we will not belabor testimony or evidence not relevant to Borden's claims now before us.

After an extensive description of the tests that he administered to Borden, Dr. Libb testified that Borden "experiences likely relatively severe character logic or personality disorder.  His coping resources were really quite limited. . . . [H]e basically had very limited ability to deal with stress, . . . a lot of difficulty in emotional control, the ability to plan ahead and to control and manage his behavior."  While Dr. Libb's testing did not indicate schizophrenia or bipolar disorder, "all the testing suggests that he does experience episodic depression."  He added, "I could see him becoming psychotic and having psychotic-like episodes and becoming paranoid and becoming severely depressed."  Dr. Libb opined that "part of the picture here could also be consistent with the possibility that some of these deficits are related to some sort of organic brain impairment as well" and that his observations "could be" consistent with a "history of psychotic episodes."  In sum, Dr. Libb testified that he believed that Borden "historically suffered from a psychiatric disorder" that "was moderately severe or moderate" and "[n]ot inconsistent with closed-head trauma."

On cross-examination, the State sought to discredit Dr. Libb's testimony by undermining the ability of his testing to detect "faking."[7]  After seeking to establish that Dr. Libb's field of expertise was incongruent with testifying regarding legal

----

[7] For example, the prosecutor asked about one of the tests administered by Dr. Libb: "Is there a control built into that test to prevent or inhibit faking?"

9

insanity, the prosecutor asked, "You're not telling these ladies and gentlemen that this defendant doesn't know the difference between right and wrong?" The witness replied, "No, I'm not." On re-direct examination, Borden's counsel elicited that Dr. Libb was not a "professional witness" and that his findings with regard to Borden's mental health left open "the possibility of a more severe psychiatric disorder" than simply a neurosis.

The defense next called Dr. Douglas Sargent, a psychiatrist with fifty years' experience who had authored about 112 publications. Like Dr. Libb, Dr. Sargent had not treated Borden prior to the murders, but had instead evaluated him in jail at the request of defense counsel. After outlining his extensive credentials, Dr. Sargent described his methodology for evaluating Borden, stating that he relied on medical records, interviews with Borden, and discussions with those close to Borden. Regarding the interviews, Dr. Sargent stated that he "ma[de] an assessment of the credibility of the stories and then tr[ied] to check them out against other sources of information to see if [he could] validate them or refute them."

When asked specifically, "Did you have an opinion as to what his diagnosis was on" December 24, 1993, Dr. Sargent replied:

> Yes. I believe he suffered from two conditions at that time: One, a—an uncertainty or weakness in impulse control and some other features which I could describe, which I would call an organic closed-

10

head injury encephalop[athy] or post-concussive syndrome. And in addition a super imposed depressive disorder, which I call a schizo affective disorder for reasons that I can describe, which he has had more or less continually since at least 1981 and which flares up from time to time requiring him to be hospitalized and for which he has been all but continuously under treatment at one mental health center or another.

Dr. Sargent went on to define "schizo affective disorder" as "a mood disorder—a depression in this case, coupled with other features that suggest schizophrenia so that you can't say he's either schizophrenic or depressed but is—suffers from a disorder which is a combination of the two." The witness described Borden as exhibiting "signs of a delusional disorder" who had "unrealistic false beliefs of persecution" and was "profoundly depressed" with suicidal tendencies. He described how Borden had related to him that one of his hospitalizations occurred as the result of grief that overcame him after beating his wife—explosive behavior that Borden had said "was like he couldn't help it. He couldn't stop it. He had no control over it."

Dr. Sargent linked this behavior to Borden's automobile accident, stating it was a "symptom commonly found in people with closed-head injuries of the kind Jeff suffered . . . called episodic discontrol." The witness testified that Borden exhibited a "sudden disappearance of the control mechanism . . . throughout the record in the frequent references by one or the other psychiatrists who had seen him in the past of his impulsive behavior." He continued at length, discussing

11

relevant mental diseases and disorders, including "thought disorder" and "mood congruent hallucinations and delusions." He also discussed Dr. Libb's report, as he had hired Dr. Libb to examine Borden.

Following an explanation of the battery of drugs Borden had taken over the years, Dr. Sargent was asked, "Doctor, considering your education and experience, . . . do you have an opinion as to whether or not at the time of this incident now, which was December the 24th, 1993, Jeff was suffering from a mental disease or defect?" Dr. Sargent answered affirmatively, explaining, "I believe that he was suffering from chronic schizo affective disorder partially compensated and from a closed-head injury that I have described before." Following up, Borden's counsel asked if Dr. Sargent had "an opinion as to whether or not Jeff's actions as—that occurred on December the 24th, 1993, were as a result of rational behavior?" The witness replied, "No, I don't." He also testified that he did not think that Borden could "appreciate the criminality" of his behavior. He explained,

> I think that he was operating under the control of a very strong impulse that he could not control, that his behavior was disorganized, . . . that his mood was disordered and that he was therefore unable to . . . appreciate the criminality. I don't even think he thought about the criminality of the act at the time.

On cross-examination, the State sought to emphasize the lack of objectivity inherent in the field of psychology, and walked Dr. Sargent through the medical

12

records to point out data inconsistent with his testimony.[8]

During re-direct examination, Dr. Sargent took up the notion that Borden was "feigning" his mental illness, testifying,

> when you have a person hospitalized eight times for mental illness when there's no apparent advantage to that, it's a little hard to believe that they would be feigning mental illness in the way that they were. Besides the totality of his behavior and the reports of his behavior on the part of the medical staff who are generally quite experienced would very quickly raise the suspicion of falsification of an illness. I don't see any reason to believe that [] he was not as sick as they say he was when they attended him.

Defense counsel continued, asking Dr. Sargent if any of the information brought up by the prosecutor on cross-examination had had any effect on his opinion as to Borden's diagnosis. Dr. Sargent's responded, "None whatsoever."

Before calling his next witness, DeWayne King, a medical assistant at the county jail, defense counsel introduced into evidence Borden's complete relevant medical history, which included records from ten medical and mental health facilities.[9] King then testified that Borden had been placed in the "psychiatric block" of the jail, which included a single bunk and a camera, as a result of his

---

[8] For example, the prosecutor asked, "[A]re you familiar with another [incident] on May the 5th, 1993, in which he tells the nurse . . . that he's going to be a model patient so he can get out and put his hands around his wife's scrawny neck and kill her?" Looking at the medical records, he later corrected his statement, saying, "Excuse me, I said 'kill her.' He said 'choke her.'"

[9] Following King's testimony, defense counsel also introduced Borden's medical records from jail into evidence.

13

psychiatric history. He also discussed the medication that Borden was taking while incarcerated. King stated that Borden was in the psychiatric block for "an awfully long time." The defense presented no more witnesses.

After the defense rested, the State presented testimony on rebuttal designed to undercut Borden's affirmative defense of not guilty by reason of mental disease or defect. The State called Dr. C. J. Rosecrans, a certified forensic examiner and a professor of psychiatry in the Department of Psychiatry at the University of Alabama at Birmingham. Dr. Rosecrans was appointed by the court to determine Borden's competency to stand trial as well as his mental state at the time of the commission of the offense. He described at length his methodology and discussions with Borden, and made several statements relevant to Borden's defense—particularly focusing on the difference between what a psychiatrist would deem a mental disease and what the law would consider "insanity." Dr. Rosecrans stated that he did "not believe [Borden] was operating under irresistible impulse" and that a review of Dr. Libb's and Dr. Sargent's reports did not change his opinion as to Borden's mental condition at the time of the incident. Dr. Rosecrans conceded that he would not "necessarily dispute that [Borden] may have at some time in the past been suffering from mental illness or psychosis." Elaborating, Dr. Rosecrans stated, "my impression from [Borden's] recitation of the event at that time is that he was upset, he was angry, he was hurt, I think he was

14

irritated, I think he was emotionally distressed, but I think . . . it was not a random activity." He concluded with a statement that, as to "the legal question you have," Borden "could have restrained" and "it was not an irresistible impulse."

On cross-examination, defense counsel focused on Dr. Rosecrans's limited study of Borden; the doctor had known that Borden had been admitted to a wide variety of medical facilities, but had not received or reviewed the majority of Borden's medical records. Further, Dr. Rosecrans based his conclusions on an interview lasting ninety minutes, the contents of which defense counsel inquired about extensively. Referencing testimony given on direct examination, defense counsel asked Dr. Rosecrans, "Are you aware that irresistible impulse is not a legal defense in Alabama?" The witness indicated that he was not. Defense counsel also inquired, "So you don't determine sanity yourself, that's for the ladies and gentlemen of the jury?" Dr. Rosecrans replied, "Exactly so." The prosecution called no further rebuttal witnesses to testify regarding Borden's mental state.

During closing argument, the State discussed the evidence that had been presented in support of Borden's affirmative defense. The prosecutor sought to characterize the defense as an "excuse," arguing that Borden had "lived a life of excuses." Further, he asked the jury to examine Borden's medical records and argued that "Dr. Sargent is the only one who says that this automobile accident has anything to do with this defendant's condition. The paid expert of the defense, the

15

only one." The State conceded that Borden had suffered from depression, but that depression alone was insufficient to find him not guilty by reason of insanity. Rather, the prosecutor argued, this was a case of "[j]ealousy and control."

Defense counsel directly engaged the prosecutor's argument that Borden's defense was merely an "excuse":

> How do you determine whether or not it is an excuse? History is helpful. Here's a man who has been hospitalized eight times for, as [the prosecutor] says, excuses. He's using it as an excuse. Well, if it's an excuse, then he's fooled eight doctors. He ought to get an academy award because he's the best actor that there could be. He's fooled eight different doctors at separate times and separate places. Read the medical reports. There's bad stuff in the medical reports. We know there was bad stuff in there, and we know that you're going to look at that bad stuff. But the defense offers the medical reports to you, not the State. They were admitted from the defense. . . . What he says in there is consistent with the defect the way those doctors see it. Not the way the doctors that testified here, but those doctors.

Defense counsel also walked the jury through testimony presented by both the State and defense witnesses, the evidence contained within Borden's medical records, and the legal standard for insanity,[10] reminding the jury that it was ultimately up to them, and not the experts who testified, to determine the validity of Borden's defense.

---

[10] Defense counsel misstated the standard for insanity in Alabama: "There is reasonable doubt here as to his sanity, ladies and gentlemen. And if there's reasonable doubt, the appropriate verdict in this case is not guilty by reason of mental defect or disease. . . . That's what the law says." The prosecutor corrected him during the State's rebuttal, explaining that Borden had pled an affirmative defense and therefore bore the burden of persuasion.

16

On rebuttal, the prosecutor discussed the strengths and weaknesses of the witnesses that the jury had seen, and, in doing so, made an argument that is relevant to Borden's ineffective assistance of counsel claim:

> And if there was a serious attempt here, folks, to give you the big picture and all the information, we're missing somebody, aren't we? The defendant's mother said that in the year 1993 leading up to these shootings that nobody, nobody, knew the defendant's condition better than Dr. Shehi. Where is he? Have you seen him? . . . And don't you think you've got a right to expect if they want to prove something to you, they're going to bring the person who according to the defendant's own mother knows more about him than anything else? And they chose not to. And I think you can infer from that why.

The court then gave its instructions to the jury, which deliberated for roughly three hours. On the afternoon of September 14, 1995, the jury found Borden guilty of the capital offense charged in Count I and guilty of the lesser-included offense of non-capital intentional murder under Count II.

## B.

Shortly after the jury delivered its verdict, the sentencing phase of Borden's trial began.[11] The State readopted all of the evidence and testimony from the guilt

---

[11] Following a capital conviction, Alabama law requires a jury—the same jury that convicted the defendant "unless it is impossible or impracticable to do so"—to return an advisory verdict that recommends a sentence of either life imprisonment without parole or death. Ala. Code § 13A-5-46. A jury recommendation of a sentence of death must be based on the vote of at least ten of the twelve jurors, while a jury recommendation of a sentence of life without parole requires a vote of a majority of the jurors. Id. § 13A-5-46(f). If the jury is unable to reach an advisory verdict recommendation, then the trial court may declare a mistrial of the sentence hearing and conduct another such hearing before a new jury. Id. § 13A-5-46(g).

Despite this jury procedure, it is the trial court that ultimately determines a defendant's sentence. Id. § 13A-5-47(e) ("While the jury's recommendation concerning sentence shall be

17

stage of the trial and sought to prove one aggravating circumstance: "this defendant at the time he fired those shots through that door created a great risk of death to a number of people."[12]  Similarly, defense counsel readopted "the evidence that you had before you in this case in the guilt phase" and sought to prove three mitigating circumstances: first, that Borden had no prior significant criminal history, see Ala. Code § 13A-5-51(1); second, that "this offense was committed while [Borden] was under the influence of extreme mental or emotional disturbance," see id. § 13A-5-51(2); and third, that Borden's ability to "appreciate the criminality of his conduct to the requirements of the law" was "substantially impaired," see id. § 13A-5-51(6).[13]

To prove its aggravating circumstance, the State called one witness at the penalty phase: Cindy Smith, Cheryl Borden's sister.  Smith was in attendance at the Harris household on the night of the murders and had previously testified at the guilt phase of the trial.  At the penalty phase, she testified to the location of the

given consideration, it is not binding upon the court.").

[12]  The above-quoted language is how the prosecutor described the aggravating circumstance; the precise statutory language is, "The defendant knowingly created a great risk of death to many persons."  Ala. Code § 13A-5-49(3).  In its charge to the jury, the court correctly stated the aggravating circumstance.

[13]  Alabama law allows a defendant to introduce both enumerated and unenumerated mitigating circumstances at the penalty phase of a capital trial.  See Ala. Code §§ 13A-5-51, 52.  Each of the mitigating circumstances presented by Borden's counsel is specifically enumerated.  See id. § 13A-5-51.

various people at the Harris's at the time of the murders. According to her testimony, there were around ten people in the house at the time Borden shot Cheryl Borden and Roland Harris.

The defense presented Borden's mother and his three sisters as witnesses at the penalty phase of his trial. Borden's mother testified that Borden had been receiving disability benefits for "mental disease" and that he had been living with her since his separation from his wife. Mrs. Borden stated that he would pace around like "a caged animal" because he believed that "[s]omebody was always after him." She also relayed information about his "very poor" hygiene habits and his inability to get any sustained sleep. Finally, she testified that Borden "definitely" had an emotional disturbance in 1993, and that he was on heavy medication "for the majority of 1993." The State did not cross-examine her.

The defense next called Jennifer Borden ("Jennifer"), Borden's nineteen-year-old sister. Jennifer lived with her parents at the time of trial, and also had lived in their home when Borden moved back following his separation from his wife. Jennifer testified that Borden returned to live at home in February 1993 and that his conduct had been "very unusual." Elaborating, she stated that "he rarely slept if any at all. And he would sit and just stare for hours. And he would mumble things sometimes . . . ." She echoed Mrs. Borden's testimony about Borden's belief that people were "after him," relaying an incident in which Borden

19

had hurt himself falling off a shed and claimed that a non-existent "someone" had thrown him off. Jennifer also testified that, to her knowledge, Borden had never been charged with or convicted of a felony. Finally, she testified about his hospital visits and his 1993 suicide attempt in Tennessee. The State very briefly cross-examined Jennifer, asking her if Borden had "acted this way all the time" he lived at home. Jennifer responded affirmatively.

The defense next called Denise Borden Purser, Borden's older sister. Purser testified about changes in Borden's mental state following his 1977 accident, recalling an incident in 1978 when Borden hallucinated, conjuring in his mind a "big black dog" with "snarling long black teeth" and "red glowing eyes." Next, she testified about Borden's behavior at a family reunion during the summer of 1993 when Borden "had just gotten out of the hospital from the shock treatments." She stated that he "was like a little wild man." Asked to describe what she meant, Purser said, "A wild man. His eyes were wild and open and all. He didn't know us at times. He didn't know the people around him. He would ask repeated questions over and over." She also testified to his "very bad" hygiene habits, and that, to her knowledge, he had never been charged with or convicted of a felony. The State did not cross-examine Purser.

The defense called as its last witness Becky Taylor, Borden's oldest sister. In her brief testimony, Taylor recalled changes to Borden's behavior after his car

20

accident, stating that he imagined people were after him. She also testified that she had no knowledge of any past felony charges or convictions. Regarding his behavior in 1993, she said, "Jeff always was pacing the floor. And he would sit and blank stare. . . . He got to where he didn't take baths or eat right, you know. That's about basically it." The State also declined to cross-examine Taylor.

During its closing argument, the State conceded that Borden had no prior significant history of criminal activity. With regard to mitigating circumstances pertaining to Borden's mental state, the State argued,

> And I believe by your verdict that you've already rejected any severe mental disease or defect on his part. And you've heard no evidence that at the time he committed this act he was under extreme mental or emotional disturbance or that he was severely impaired so as to be unable to understand the criminality of his conduct.

The prosecutor concluded, "What we do have is a great risk of death to many people versus no significant history of prior criminal activity. One to one. What is more important is up to you."

Defense counsel took issue with the State's characterization of the factors to be weighed as "[o]ne to one," and argued that all three proposed mitigating circumstances had been proved. He concluded with a lengthy argument about the rationale behind the prohibition of executing the legally insane, tying in the ability to "repent" and other religious themes. He also admonished the jury with a reminder that "Thou shall not kill," seemingly arguing that sentencing Borden to

21

death as opposed to life without parole would be in contravention of concepts that "go[] back to the biblical law."

On rebuttal, the State referred to defense counsel's arguments based on the Ten Commandments as "disgraceful," stating that he "isn't going to succeed in shaming you or making you feel ashamed or embarrassed or guilty about return[ing] the fair and just verdict in this case." Notably, the State did not emphasize that defense counsel never called Dr. Shehi or any of Borden's treating physicians at the penalty phase of trial.

The court gave a lengthy charge to the jury. Significantly, in its explanation of mitigating circumstances, the court stated:

> a person's capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of law is not the same as his ability to know right from wrong generally or to know what he is doing at a given time or to know what he is doing is wrong. A person may indeed know that doing the act that constitutes the capital offense is wrong, and still not appreciate its wrongfulness because he does not fully comprehend or is not fully sensible to what he is doing or how wrong it is. For this mitigating circumstance to exist, the defendant's capacity to appreciate does not have to have been totally obliterated. . . .

On the morning of September 15, 1995, the jury recommended that Borden be sentenced to death by a vote of 10-2. In delivering its verdict, the jury did not reveal which mitigating circumstances it found, if any.

On November 13, 1995, the circuit court followed the jury's

22

recommendation and sentenced Borden to death by electrocution for the conviction under Count I.  The following day, the court sentenced him to life imprisonment for the conviction of the lesser-included offense under Count II.

On September 26, 1996, the circuit court issued a written sentencing order specifically identifying aggravating and mitigating circumstances found by the court as required by Alabama Code § 13A-5-47(d).  The court found one aggravating circumstance: "The defendant knowingly created a great risk of death to many persons."  Id. § 13A-5-49(3).  In contrast, the court found two mitigating circumstances, to wit, that the defendant had "no significant history of prior criminal activity," id. § 13A-5-51(1), and that "[t]he capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance," id. § 13A-5-51(2).  The court concluded "that the aggravating circumstance noted above outweighs the mitigating circumstances noted and the jury's 10 to 2 recommendation for death is the appropriate sentence."

## C.

On direct appeal,[14] the Alabama Court of Criminal Appeals affirmed Borden's death sentence but reversed his conviction for the intentional murder of

_____

[14] While Borden had counsel on appeal, Michael Shores and J. Massey Relfe, Jr.—Borden's counsel at trial—no longer represented him.

Roland Harris because it violated the principle of double jeopardy.[15] Borden v.

State, 711 So. 2d 498, 503–04 (Ala. Crim. App. 1997). In a brief opinion, the

Supreme Court of Alabama affirmed Borden's capital conviction and sentence of

death. Ex parte Borden, 711 So. 2d 506 (Ala. 1998). The United States Supreme

Court denied Borden's petition for a writ of certiorari. Borden v. Alabama, 525

U.S. 845, 119 S. Ct. 113, 142 L. Ed. 2d 91 (1998).

On August 30, 1999, Borden began his attempt to obtain state post-

conviction relief by filing a Petition for Relief from Judgment Pursuant to Rule 32

of the Alabama Rules of Criminal Procedure[16] in the Circuit Court of Jefferson

County. In his petition, Borden argued, inter alia, that his trial counsel had

rendered ineffective assistance of counsel at the penalty phase of his trial. The

State filed an answer to this petition on October 5, 1999. Three days later, the

State filed a pair of motions, each seeking partial dismissal of Borden's claims.

One of the State's motions sought dismissal of many of Borden's

---

[15] In short, the court held that

> where, as here, the jury returns guilty verdicts for both a capital offense alleged in one count of the indictment and the lesser included offense of intentional murder of a capital offense alleged in another count of the indictment, and the same murder was an element of the capital offense and the intentional murder conviction, the trial court should enter a judgment on only one of the offenses.

Borden v. State, 711 So. 2d 498, 503 (Ala. Crim. App. 1997) (citations omitted).

[16] Rule 32 of the Alabama Rules of Criminal Procedure governs available post-conviction remedies under Alabama law.

24

claims—including his ineffective assistance of counsel claims—for failure to comply with Rule 32.6(b) of the Alabama Rules of Criminal Procedure. This motion requested that the court "dismiss those claims in the petition which <u>fail to state a claim for relief or establish any material facts which entitle Borden to relief</u>." (emphasis added). Rule 32.6(b) provides:

> **Specificity**. The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.

Ala. R. Crim. P. 32.6(b).

The State's other motion sought dismissal of some of Borden's claims—claims not at issue here—under Rule 32.2(a) of the Alabama Rules of Criminal Procedure, which precludes collateral relief for a petitioner who fails to comply with state procedural rules.

Borden filed a response to these motions on November 1, 1999, and then, on November 15, 1999, filed a Motion for Discovery to obtain institutional records and files regarding his medical and mental health.

On May 15, 2000, the circuit court issued a pair of orders granting both of the State's motions. In the order granting the State's motion on the ground that Borden failed to plead his claims with sufficient specificity, the court stated that "the following claims, as written, are foreclosed from review under Rule 32.6(b)."

25

Borden's ineffective assistance of counsel claims were included in this dismissal. Nonetheless, the court ruled that "Borden may, within thirty (30) days of this Order, amend the above-cited claims to comply with the requirements of Rule 32.6(b), Ala. R. Crim. P. If Borden fails to amend his petition, the above-cited claims are foreclosed from review by this Court."[17]

In contrast, the court's other order dismissing claims under Rule 32.2 of the Alabama Rules of Criminal Procedure stated, "the following claims are procedurally barred under Rule 32.2(a), Ala. R. Crim. P." (emphasis added).

On September 20, 2000, Borden filed an amended Rule 32 petition for post-conviction relief.[18] Two days later, the court granted Borden discovery of all pertinent records from the Alabama Department of Corrections. In addition, the court granted Borden discovery of materials from the prosecution pertaining to its investigation into the murders, as well as documents relating to his arrest and prosecution.

For the purposes of our analysis, this amended Rule 32 petition (the "Amended Rule 32 Petition" or the "Amended Petition") is the operative pleading in this case. See infra part II.B. In the Amended Petition, Borden presented

---

[17] The granting of time to amend is consistent with the Alabama Rules of Criminal Procedure. See Ala. R. Crim. P. 32.7(b) ("Amendments to pleadings may be permitted at any stage of the proceeding prior to the entry of judgment.").

[18] The court accepted the September 20 filing despite its apparent untimeliness.

26

fourteen separate grounds for post-conviction relief. The relevant ground for relief was entitled: "Trial Counsel Was Ineffective During the Penalty Phase of Mr. Borden's Trial, and This Ineffectiveness Resulted in the Unjust and Unconstitutional Imposition of the Death Penalty." Borden laid out his claims:

54. Trial counsel was grossly ineffective at the penalty phase of the trial, and the jury subsequently returned a 10-2 death recommendation, which was followed by the trial court's sentence of death. Despite the wealth of mitigating factors – both statutorily enumerated and nonenumerated – trial counsel called only four witnesses, whose extremely brief testimony spans a total of only 25 pages of the transcript. Trial counsel's deficient performance prevented the jury and the trial court from hearing and considering an abundance of mitigating evidence, and thus denied Mr. Borden a fair and accurate penalty phase determination as required under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Alabama Constitution, and Alabama law. Quite simply, trial counsel abdicated its constitutionally mandated obligation to present a defense at the most important phase of Mr. Borden's capital trial.

55. It is absolutely essential that trial counsel in a capital case fully investigate the history of the client in preparation for the penalty phase of a capital proceeding. It is constitutionally required that the trial court and the jury consider "as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604 (1978). This includes any evidence about the defendant's history and life that may be considered by the jury or judge as a mitigating factor. Woodson v. North Carolina, 428 U.S. 280 (1976). Thus, Mr. Borden was entitled to have all aspects of his background, family life, medical history, school records, and any other life-experience that may be considered mitigating evidence presented to the jury and judge at the penalty phase of his capital trial. Counsel for Mr. Borden fell far short of this constitutionally required mandate.

56. In order to have prepared properly for the penalty phase of

27

Mr. Borden's capital trial, counsel should have obtained complete and accurate information relevant to Mr. Borden's medical history, educational history, employment and training history, family and social history, his correctional history, and any religious or cultural influences.  See American Bar Association, Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, 11.4.1(A)(2)(c) (adopted by the ABA house of delegates Feb. 7, 1989).  Counsel in Mr. Borden's case failed these minimum requirements of an adequate investigation.  "At the heart of effective representation is the independent duty to investigate and prepare [the client's case.]"  Goodwin v. Balkcom, 684 F.2d 794, 805 (11th Cir. 1982), cert. denied 460 U.S. 1098 (1983).  Counsel is under a clear duty to thoroughly investigate a client's background in preparation for a capital penalty phase, and the failure to do so precludes a finding that the absence of a penalty phase investigation was strategic.  See, e.g., Baxter v. Thomas, 45 F. 3d 1501 (11th Cir. 1995) (finding counsel ineffective for failing to request state hospital records, school records, social service records, and failed [sic] to contact the defendant's sister, neighbor, or social worker); Cave v. Singletary, 971 F.2d 1513 (11th Cir. 1992) (finding that the complete failure to investigate and prepare for the penalty phase rendered counsel's assistance ineffective and required a new penalty phase); Cunningham v. Zant, 928 F.2d 1006) (11th Cir. 1991) (failure to put on evidence of defendants [sic] disadvantaged background, the death of defendant's father when the defendant was six, and evidence of defendant's mild retardation deprived the defendant of the constitutionally mandated individual sentence determination); Thomas v. Kemp, 796 F.2d 1322 (11th Cir. 1986), cert. denied, 479 U.S. 996 (1986) (finding ineffective assistance of counsel where little effort was made to investigate possible sources of mitigation evidence); Blanco v. Singletary, 943 F.2d 1477 (11th Cir. 1991), cert. denied, 504 U.S. 943 (1992) (criticizing counsel who did not attempt to contact family members or prepare for the penalty phase until the trial was underway, and who failed to put on any mental health mitigating evidence); Jackson v. Herring, 42 F. 3d 1350 (11th Cir. 1995) (finding that the failure of counsel to investigate family history and background of client is inexplicable, could not be considered strategic, and required reversal); Blake v. Kemp, 758 F.2d 523 (11th Cir. 1985) (finding a presumption of prejudice where trial counsel made no effort to

28

prepare for the penalty phase of a capital trial); see also Douglas v. Wainwright, 714 F.2d 1532, 1556 (11th Cir. 1983) ("Permissible trial strategy can never include the failure to conduct a reasonably substantial investigation."). In this instance, effective preparation and investigation by defense counsel would have revealed a host of mitigating factors, which should have been presented at Mr. Borden's penalty phase. This failure constitutes clear ineffectiveness, cannot be characterized as strategic, and requires that this Court reverse Mr. Borden's sentence of death.

57. Trial counsel failed to conduct a reasonable independent investigation of the case, failing, among other things, to interview adequately Mr. Borden's family, friends and acquaintances. In addition to failing to investigate facts available from individuals then unknown to them, such as Mr. Borden's friends and acquaintances, trial counsel failed to adequately interview the witnesses of which they were then aware. For example, trial counsel failed to sufficiently meet with Mr. Borden's family prior to trial, despite the fact that Mr. Borden's parents both possessed information that would have been useful to Mr. Borden's defense.

58. Had counsel contacted other people who had interacted with Mr. Borden, they would have been able to present a complete portrait of Mr. Borden, which would have lessened his culpability for the crime, revealed numerous mitigating circumstances, and led the jury to impose a lesser sentence of life without possibility of parole.

59. In addition to defense counsel's failure to contact people who could offer useful mitigation evidence, counsel failed to procure many necessary records documenting Mr. Borden's life. These records include school records, health records, employment records, and religious records of both Mr. Borden and his parents and siblings.

60. If counsel had obtained these records and interviewed even a portion of the potential witnesses who were willing to testify for Mr. Borden, counsel could have established numerous mitigating factors that could have swayed the jury to a finding of life in prison rather than death.

61. Trial counsel even failed to present the vast majority of the mitigating evidence that was available to them even without an investigation. For example, trial counsel failed to offer any of the mitigating evidence which tended to show that Mr. Borden had not premeditated the crime and which tended to show that at the time of

29

the crime he was acting under an extreme mental or emotional disturbance and his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.

62. In addition, counsel was ineffective for not obtaining the services of expert assistance for the penalty phase of the trial. Medical experts could have explained the likely causes and consequences of Mr. Borden's emotional and physical problems; without such assistance, counsel was in no position to adequately understand or even recognize such evidence if it were encountered during the investigation for Mr. Borden's penalty phase.[19]

. . .

B.      *Trial Counsel Failed to Call Any Witnesses at All Regarding Mr. Borden's Mental Health.*

65. During the penalty phase, trial counsel failed to call any witnesses at all with regard to Mr. Borden's mental health. New testimony was needed since, as discussed more fully below, the legal standards related to Mr. Borden's mental health at the guilt stage are significantly different from those at the penalty phase. Indeed, during closing arguments of the penalty phase, trial counsel did not even refer to the mental health testimony that had been presented during the guilt phase of Mr. Borden's trial.

66. As during the guilt phase, trial counsel at the penalty phase failed to present testimonial evidence from any of Mr. Borden's mental health care providers.

67. Mental health testimony would have played an important part in Mr. Borden's mitigation case, given the reduced level of mental health deficiency necessary to create a mitigating condition.

. . .

F.      *Trial Counsel Failed to Relate Any of the Evidence Offered During the Mitigation Phase to the Statutory Mitigation Requirements.*

---

[19] Footnote 3 of the Amended Petition here stated: "Of course, counsel did not even conduct a threshold level of investigation, nor did they procure any of the records or interview any of the friends, teachers, professional associates, and medical personnel that would have led to information to be assessed by such experts."

30

74. During the penalty phase, some potentially mitigatory evidence was presented to the jury. However, trial counsel failed to inform the jury of what this mitigation evidence was and how it related to the statutory mitigation factors.

75. This failure hampered the jury's ability to apply the minimal amount of mitigating evidence offered by trial counsel to the statutory mitigation factors.

. . . .

(emphasis added).

On October 24, 2000, the State filed an answer to Borden's Amended Rule 32 Petition. On that day, the State also filed a separate motion for partial dismissal of Borden's relevant claims under Rule 32.6(b). Borden responded to the State's answer on November 9, 2000, claiming that the Amended Petition sufficiently pled his ineffective assistance of counsel claims to comply with the requirements of Rule 32.6(b). On February 28, 2001, the circuit court dismissed Borden's entire Amended Petition, stating in a minute entry:

The Court having considered the pleadings of the parties and the record of the Court grants the State's Motion to Dismiss all of the petitioner's claims alleging ineffective assistance of counsel at the guilt phase and the penalty phase of his trial on the following ground.

1. This Court tried the petitioner's case and finds that he has failed to meet his burden of proof regarding allegations of ineffective assistance of counsel.

This Court has also reviewed the District Attorney's file provided by the State and finds no discoverable material; however, the Court has provided the petitioner with the Grand Jury notes in their file.

31

The petition for relief from judgment (Rule 32) is dismissed.

(emphasis added).

Borden appealed, and on March 22, 2002, the Alabama Court of Criminal Appeals remanded the case to the circuit court, finding several deficiencies with the circuit court's summary dismissal of Borden's Amended Petition. Borden v. State, 891 So. 2d 393 (Ala. Crim. App. 2002). First, the appellate court found that the circuit court "appears to have misapprehended Borden's burden at the pleading stage" when it stated that Borden had not met his "burden of proof" in his Amended Petition. Id. at 396. Rather, the appellate court noted, Borden only had the burden to plead under Rule 32.6(b). Id. Next, the appellate court chastised the circuit court for "fail[ing] to adequately dispose of all of the claims Borden raised in his amended petition." Id. In addition to "not sufficiently address[ing] the merits of" Borden's ineffective assistance of counsel claims, the "trial court failed to address any [sic] the remainder of the claims Borden raised in his petition . . . ." Id. at 396–97. As such, the Court of Criminal Appeals remanded the case to the circuit court, instructing it to

> determine whether an evidentiary hearing should be held on any of Borden's claims. . . . If an evidentiary hearing is held, the trial court shall enter specific written findings with regard to each of the claims presented at the hearing. The trial court should submit a specific written order addressing any claims that are dismissed without a hearing.

Id. at 397 (citation omitted).

In April 2002, before the circuit court issued an order on remand, Borden filed a second amended Rule 32 petition as well as a motion seeking to allow licensed mental health professionals access to Borden for evaluative purposes. The State moved to dismiss the second amended petition on the ground that the circuit court had no jurisdiction to entertain amendments to the petition once an appeal had been taken, arguing that "when a petitioner files a notice of appeal in the appropriate appellate court, such as the Alabama Court of Criminal Appeals, that act will transfer jurisdiction over the matter from the relevant circuit court to the appellate court." As such, the State claimed that the circuit court on remand could only comply with the limited instructions provided by the Court of Criminal Appeals.

On August 27, 2002, the circuit court granted the State's motion to dismiss Borden's second amended Rule 32 petition. The same day, the circuit court entered an Order on Remand denying Borden's Amended Rule 32 petition in its entirety.[20] The court never granted Borden an evidentiary hearing. Additionally,

---

[20] Borden accuses the circuit court, in drafting the Order on Remand, of impermissibly adopting the State's proposed order as its own. The Alabama Court of Criminal Appeals addressed this issue:

> [T]he trial court did not adopt the proposed order verbatim; rather, the trial court omitted portions of the proposed order and inserted additional findings of its own. The trial court was very familiar with the facts of the case and with the post-

the court did not formally rule on the request that mental health professionals be given access to Borden.

In dismissing the entire Amended Petition in its Order on Remand, the circuit court first divided many of Borden's claims into two groups: "Procedurally Barred Claims," which were "procedurally defaulted from . . . review" under Rule 32.2 of the Alabama Rules of Criminal Procedure, and "Claims That Lack a Sufficient Factual Basis," which were "dismissed because they do not contain a sufficient factual basis" under Rule 32.6(b). The claims dismissed for failure to plead a sufficient factual basis included:

> Claim II (paragraphs 55–60) – The claim that trial counsel were ineffective because they failed to investigate mitigation;
>
> Claim II (paragraph 62) – The claim that trial counsel were ineffective because they failed to obtain the services of experts for the penalty phase of the trial;
>
> Claim II-B (paragraphs 65–67) – The claim that trial counsel were ineffective because they failed to call any witnesses at all regarding Borden's mental health during the penalty phase;
> . . .
>
> Claim II-F (paragraphs 74–75) – The claim that trial counsel were ineffective because they failed to relate any of the evidence offered

_____

conviction proceedings. The record indicates that the findings of fact and the conclusions of law contained in the final order are those of the trial court. The adoption of the majority of the State's proposed order does not constitute reversible error here.

Borden v. State, No. CR-00-1379, at 3 (Ala. Crim. App. Aug 22, 2003).

34

during the penalty phase of the trial to the statutory mitigating circumstances;

. . . .

In addition, the court found fifteen claims that it "determine[d were] not procedurally barred and contain[ed] a sufficient factual basis," discussing them separately in a section titled, "Merits of Remaining Ineffective Assistance of Counsel Claims." In dismissing these claims, the court generally relied on information contained within the record to refute the allegations.[21] Two of these claims are relevant to our discussion.

In discussing Borden's general allegation that his counsel were ineffective during the penalty phase of his trial—contained in paragraph 54 quoted above—the circuit court quoted the Alabama Rules of Criminal Procedure at length and concluded, "Borden's claims concerning his attorneys' failure to investigate and present mitigation are denied because Borden failed to plead these claims with specificity. Rule 32.6(b), Ala. R. Crim. P." Declining to stop its analysis there, the court continued to address the merits of Borden's claim. The court concluded that

> Borden's attorneys clearly investigated, presented, and argued
> mitigating circumstances during the penalty phase of his trial.
> Borden's allegations in his amended Rule 32 petition that he failed to
> find and present more unspecified evidence does not establish
> deficient performance or that he was prejudiced by the actions of his

---

[21] For example, Borden claimed that trial counsel was ineffective for failing to employ a jury selection expert during voir dire, and the court dismissed this claim on the basis of record evidence that Borden did in fact have the assistance of an expert during voir dire.

trial counsel. Because these claims are not sufficiently specific and fail to state a claim for relief, these claims are denied. See Rule 32.7(d), Ala. R. Crim. P.

(emphasis added).

Also in the "Merits" section of the Order on Remand, the circuit court dismissed the claim that Borden's counsel were ineffective during the penalty phase of his trial for failing to "present the vast majority of the mitigating evidence that was available to them even without an investigation." Deeming this claim "without merit," the court discussed the "significant amount of mitigation evidence [produced] during the penalty phase of his capital murder trial," including "testimony from two doctors, a medical assistant, and four family members."[22] The court stated its belief that "Borden's trial counsel provided enough information to the jurors to enable them to find that Borden's alleged mental or emotional disturbance constituted a mitigating circumstance." As such, the court held that Borden had "failed to establish deficient performance" and further had "not attempted to demonstrate that he was prejudiced by the actions of his trial counsel. The record in this case reveals that Borden can never satisfy his burden of proof as

---

[22] As noted above, no doctors testified during the penalty phase, but their testimony during the guilt phase was adopted by counsel during the penalty phase for the jury's consideration.

36

to this claim.  See Ala. R. Crim. P. 32.3.  This claim is denied."[23]

On August 22, 2003, the Alabama Court of Criminal Appeals affirmed the circuit court's Order on Remand.  Borden v. State, No. CR-00-1379 (Ala. Crim. App. Aug 22, 2003).  In doing so, the appellate court issued a lengthy Memorandum discussing its reasoning in review of the circuit court's decisions. The Court of Criminal Appeals began by affirming the circuit court's dismissal of Borden's second amended petition, stating that it would "review only the allegations contained in the first amended petition in our analysis of whether the circuit court correctly found that many of the claims of ineffective assistance of counsel were not sufficiently pleaded."  Id. at 4.  Citing Rule 32.3 of the Alabama Rules of Criminal Procedure for the proposition that state petitioners seeking post-conviction relief bear the burden to plead facts necessary to entitle relief, the court continued on to affirm the denial of an evidentiary hearing:

> [A] Rule 32 petitioner is not automatically entitled to an evidentiary hearing on any and all claims raised in the petition.  To the contrary, Rule 32.7(d), Ala. R. Crim. P., provides for the summary disposition of a Rule 32 petition if the court determines that the claims in the

---

[23] Rule 32.3, "**Burden of Proof**," states:

The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.  The state shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence.

Ala. R. Crim. P. 32.3.

petition are not pleaded with sufficient specificity, in violation of Rule 32.6(b), or if the claims are precluded, pursuant to Rule 32.2, or if the allegations fail to state a claim, or if the court determines that no material issue of law or fact exists which would entitle the petitioner to relief.

Id. at 5.

The Court of Criminal Appeals then proceeded to address Borden's claims one by one, utilizing Rule 32.6(b) to dismiss relevant claims that Borden failed to plead with the requisite specificity. For example, in dismissing Borden's claim that his counsel failed to investigate and introduce mitigating evidence at the penalty phase of his trial, the court stated:

> In the allegations of the paragraphs which are set out above, Borden made only broad, vague assertions regarding counsel's alleged failures, and he put forth conclusions of law and only bare allegations that his constitutional rights had been violated. Such vague assertions and unsupported conclusions are insufficient to withstand summary dismissal for they failed to contain the required specificity and a full disclosure of the factual basis. Rule 32.6(b), Ala. R. Crim. P.

Id. at 22. This language is representative of the court's handling of Borden's ineffective assistance claims.

The appellate court also criticized Borden for failing "to identify even a single name of the many 'family, friends and acquaintances' who, he alleged, should have been but were not interviewed 'adequately.'" Id. at 22–23. Later in the Memorandum, the court explicitly cited the Strickland test for determining ineffective assistance of counsel when discussing Borden's claim that counsel

38

failed to present facts at the penalty phase of his trial that tended to support the purported mitigating circumstances. The court stated, "Borden has failed to plead this claim with sufficient specificity and has, as a result, failed to state a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984)." Id. at 29. Nowhere in the Memorandum did the court state that it was refusing to adjudicate Borden's relevant ineffective assistance claims due to the operation of a state procedural rule; rather, it repeatedly stated that Borden simply did not state a claim with sufficient factual support as required by Rule 32.6(b) to preclude summary dismissal under Rule 32.7(d) of the Alabama Rules of Criminal Procedure.

On November 14, 2003, Borden's application for rehearing in the Court of Criminal Appeals was denied without opinion, and on May 28, 2004, the Alabama Supreme Court denied Borden's petition for a writ of certiorari.

D.

On June 25, 2004, Borden filed a petition seeking habeas relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Alabama. On September 9, 2008, the district court denied Borden's petition without conducting an evidentiary hearing. In its Memorandum of Opinion, the district court found that Borden had procedurally defaulted on his ineffective assistance of counsel claims, because Rule 32.6(b) was an independent and

39

adequate state procedural rule.  In addition, the district court undertook an

"Alternative Merits Consideration," finding that

> [e]ven if the state courts' procedural default ruling . . . can be
> construed as a decision on the merits, Borden cannot show that the
> decision was contrary to or an unreasonable application of clearly
> established federal law, nor can he show that the decision was based
> upon an unreasonable determination of the facts in light of the
> evidence before the state courts.[24]

On August 28, 2009, the district court granted Borden's motion requesting a

Certificate of Appealability ("COA"), certifying three issues for our review:

> 1.  Was the "specificity requirement" of Rule 32.6(b) of the Alabama
> Rules of Criminal Procedure firmly established and regularly followed
> by the Alabama courts at the time of petitioner's Rule 32 proceedings,
> so that it was an "adequate" basis for procedural default under federal
> law?
>
> 2.  Did counsel provide ineffective assistance when they failed to
> interview and present as witnesses during the penalty phase of trial the
> petitioner's "treating" physicians, identified in medical and
> psychological records admitted into evidence, where the records were
> available to the jury and two other (non-treating) mental health
> experts testified about the petitioner's mental state during the guilt
> phase of trial?
>
> 3.  Can a claim of ineffective assistance of counsel be based on the

---

[24]  To justify this conclusion, the district court found that

almost all of the evidence Borden contends should have been investigated,
prepared, and presented at the penalty phase of trial was presented during the guilt
phase and was referred to at the penalty phase of trial.  It is simply not true that
there was any substantial mental-illness evidence that was not presented to the
jury and available for their consideration.

(emphasis added).

40

"cumulative effect" of multiple non-prejudicial errors by counsel when none of the individual errors themselves warrants a finding of ineffective assistance under <u>Strickland</u>?[25]

We address these questions in turn.

## II.

## A.

As a threshold matter, we must determine whether the application of Rule 32.6(b) by the Alabama courts to Borden's ineffective assistance claims precludes our review. See, e.g., <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001). "A state court's rejection of a petitioner's [federal] constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." <u>Id.</u> (citing <u>Harmon v. Barton</u>, 894 F.2d 1268, 1270 (11th Cir. 1990)).[26] In contrast, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") dictates that a federal court deferentially review a petitioner's claims

---

[25] On September 21, 2009, this court granted Borden's motion to expand the COA to include all of his ineffective assistance of counsel claims relating to the investigation and presentation of mitigation evidence at the penalty phase of his trial. We nonetheless quote the original COA because his counsel's alleged failure to present the testimony of his treating physicians at the penalty phase of his trial constitutes the crux of Borden's relevant Sixth Amendment claims. We have, of course, considered all claims cognizable under the expanded COA.

[26] Of course, a state's purported reliance on a procedural bar does not necessarily preclude federal habeas review; a habeas petitioner may overcome a procedural default if he can show adequate cause and actual prejudice, or, alternatively, if the failure to consider the merits of his claim would result in a fundamental miscarriage of justice. See, e.g., <u>Coleman v. Thompson</u>, 501 U.S. 722, 749–50, 111 S. Ct. 2546, 2564–65, 115 L. Ed. 2d 640 (1991). Because we find no procedural default here, we need not analyze these issues.

that a state court has "adjudicated on the merits."  28 U.S.C. § 2254; see also infra

part II.B.  The district court determined that Borden's ineffective assistance of

counsel claims dismissed under Rule 32.6(b) were procedurally barred, a mixed

determination of fact and law that we review de novo.  Judd, 250 F.3d at 1313.

Upon thorough review of Alabama law and the record in this case, we hold that the

state court summary dismissals of Borden's constitutional claims under Rule

32.6(b) were adjudications on the merits, and are therefore not procedurally barred,

but subject to review under AEDPA.[27]

1.

To begin, we observe that Alabama, like several of the States, has adopted a

post-conviction scheme that closely resembles the post-conviction scheme

Congress established for the review of state court convictions under 28 U.S.C.

§ 2254 and federal court convictions under 28 U.S.C. § 2255.  An extensive

comparison of the federal scheme to Alabama's informs our final determination

---

[27] In urging this court to affirm the district court's ruling that adjudications under Rule 32.6(b) serve as a procedural bar, Alabama relies on the unpublished opinion in Jenkins v. Bullard, 210 F. App'x 895 (11th Cir. 2006), which held that Rule 32.6(b) was an independent and adequate state ground to preclude review of ineffective assistance of appellate counsel claims.  Id. at 900–01.  We are unpersuaded to follow this ruling.  "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2. Furthermore, "[t]he court may cite to [unpublished opinions] where they are specifically relevant to determine whether the predicates for res judicata, collateral estoppel, or double jeopardy exist in the case, to ascertain the law of the case, or to establish the procedural history or facts of the case."  11th Cir. R. 36, I.O.P. 7.  None of these considerations apply here, and we decline to follow Jenkins, particularly where the issue has been addressed in a published opinion.  See Powell v. Allen, 602 F.3d 1263 (11th Cir. 2010).

that Rule 32.6(b) summary dismissals are adjudications "on the merits."

Beginning with the federal rules,[28] Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts (the "§ 2254 Rules") and Rule 2 of the Rules Governing Section 2255 Proceedings in the United States District Courts (the "§ 2255 Rules") contain provisions very similar to those in Rule 32.6 of the Alabama Rules of Criminal Procedure. Rule 2 of the 2254 Rules, entitled "The Petition," states in subsection (c):

> **Form**. The petition must:
> (1) specify all the grounds for relief available to the petitioner;
> (2) state the facts supporting each ground;
> (3) state the relief requested;
> . . . .

and in subsection (d):

> **Standard Form.** The petition must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule.

28 U.S.C. § 2254 Rule 2 (emphasis added).[29]

---

[28] Stylistic amendments were made to the federal habeas rules, effective December 1, 2004. See, e.g., 28 U.S.C. § 2254 Rule 2 advisory committee notes ("The language of Rule 2 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended, except as described below."). No substantive changes affect our analysis. We therefore quote the current version of the rules for the sake of clarity, despite the fact that Borden's initial habeas petition was filed prior to December 1, 2004.

[29] Rule 2 of the § 2255 Rules is identical (except that the petition is referred to as "The Motion" and the petitioner is "the moving party"). See 28 U.S.C. § 2255 Rule 2.

The "Appendix of Forms" annexed to the § 2254 Rules is prefaced with a list of ten "Instructions."  The ninth instruction reads:

> 9. **CAUTION**: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge.  And you must state the facts that support each ground.  If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

28 U.S.C. § 2254 Appendix of Forms (emphasis in original).

The form petition set out in the Appendix provides for the presentation of grounds for relief:

> GROUND ONE: _____
> _____
> (a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.): _____
> _____
> (b) If you did not exhaust your state remedies on Ground One, explain why. _____
> _____
> . . . .

Id.  The form goes on to elicit the state court disposition of Ground One on direct appeal or in post-conviction proceedings, whichever the case may be.[30]

The § 2254 Rules and the § 2255 Rules mandate "fact pleading" as opposed to "notice pleading," as authorized under Federal Rule of Civil Procedure 8(a).

---

[30]  The Appendix of Forms annexed to the § 2255 Rules contains the same "**CAUTION**" instruction and sets out a form closely resembling the form petition used in § 2254 cases; the differences between the forms simply reflect the differences inherent in §§ 2254 and 2255 proceedings.  See 28 U.S.C. § 2255 Appendix of Forms.

Coupled with the form petition or motion, the federal rules give the petitioner or movant ample notice of this difference. If, for example, Rule 2(c)(1) and (2) of the § 2254 Rules should cause a petitioner (or his counsel) to doubt what the words "specify all grounds" and "state the facts supporting each ground" mean, the **CAUTION** contained in paragraph (9) of the "Instructions" should remove such doubt. As the Supreme Court has observed, "[h]abeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c)." McFarland v. Scott, 512 U.S. 849, 856, 114 S. Ct. 2568, 2572, 129 L. Ed. 2d 666 (1994).

The reason for the heightened pleading requirement—fact pleading—is obvious. Unlike a plaintiff pleading a case under Rule 8(a), the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards. The evidence supporting a claim brought under the doctrine set forth in Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), for example, may not be available until the prosecution has run its course. The evidence supporting an ineffective assistance of counsel claim is available following the conviction, if not before. Whatever the claim, though, the petitioner is, or should be, aware of the

45

evidence to support the claim before bringing his petition.[31]

Rule 4 of the § 2254 Rules puts the petitioner on notice of what is likely to happen if his petition fails to comply with the fact pleading requirements of Rule 2(c) and (d). "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."[32] The judge acts <u>sua sponte</u>. "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face, <u>see</u> 28 U.S.C. § 2254 Rule 4." <u>McFarland</u>, 512 U.S. at 856, 114 S. Ct. at 2572. As discussed below, such a summary dismissal by a federal court constitutes a ruling on the merits of a petitioner's or movant's claims.

By comparison, Rule 32 of the Alabama Rules of Criminal Procedure establishes essentially the same fact pleading scheme the federal district courts use in §§ 2254 and 2255 proceedings.[33] Rule 32.6(b) of Alabama's rules,

---

[31] Inherent in the fact pleading requirement of the federal habeas rules is the notion that a habeas case is not a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim.

[32] Rule 4(b) of the § 2255 Rules mirrors Rule 4 of the § 2254 Rules. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." 28 U.S.C. § 2255 Rule 4(b).

[33] The Rule 32 in effect at the time Borden filed the petition at issue is essentially identical to the Rule 32 in effect today. We quote the current version.

46

"**Specificity**," requires the same information the federal rules require:

> The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.

Ala. R. Crim. P. 32.6(b). The petitioner must fact plead his claim. If Rule 32.6(b) does not make this clear, Rule 32.6(a) does. Rule 32.6(a) states that "[t]he petition should be filed by using or following the form accompanying this rule. If that form is not used or followed, the court shall return the petition to the petitioner to be amended to comply with the form." Ala. R. Crim. P. 32.6(a).[34]

The form is like the one used in §§ 2254 and 2255 cases. It is prefaced with instructions and the command: "READ THESE INSTRUCTIONS CAREFULLY BEFORE YOU BEGIN PREPARING THE PETITION." Ala. R. Crim. P. 32 Appendix. There are nine instructions. Instructions (4) and (5) are unambiguous:[35]

> (4) YOU MUST INCLUDE IN THIS PETITION ALL GROUNDS FOR RELIEF. FAILURE TO INCLUDE A GROUND FOR RELIEF IN THIS PETITION MAY RESULT IN YOUR BEING BARRED

---

[34] Alabama first introduced a form petition for those seeking state post-conviction relief in 1987, appending it to Rule 20 of the Alabama Temporary Rules of Criminal Procedure, the predecessor to the modern Rule 32. In contrast, the federal form petition attached to the § 2254 Rules was made effective in 1976. See 28 U.S.C. § 2254 Rule 2 advisory committee notes. While we have no direct evidence as to the Alabama legislature's intent in adopting the form, we think it safe to infer from this chronology that Alabama lawmakers mimicked the federal post-conviction scheme, including the form petition, in formulating Alabama's.

[35] Indeed, instructions (4) and (5) are the only instructions printed in all capital letters.

47

FROM PRESENTING IT IN A FUTURE PETITION.

(5) YOU MUST INCLUDE ALL FACTS SUPPORTING EACH GROUND FOR RELIEF AND YOU MUST BE AS SPECIFIC AS POSSIBLE AS TO THE FACTS.

Id. The need for a complete statement of facts is reiterated in paragraph 12 of the form. That paragraph contains a non-exhaustive list of "the possible grounds for relief under Rule 32." Id. The petitioner is instructed to "[c]heck the ground(s) that apply in your case, and follow the instruction under the ground(s)." Id. Nine grounds are listed; ground (9) is: "Denial of effective assistance of counsel." Id. Immediately following ground (9), the form tells the petitioner how to state his claim(s):

> If you checked this ground of relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each constitutional violation that you claim, whether or not it is one of the nine listed above, and include under it each and every fact you feel supports this claim. Be specific and give details.

Id. (emphasis added). In sum, the form petition is part of Rule 32 and should be read in conjunction with Rule 32.6(b). That is, the above instruction—"include . . . each and every fact you feel supports this claim" and "[b]e specific and give details"—and Rule 32.6(b)'s instruction—make "full disclosure of the factual basis" for a claim—are read together. Id.; Ala. R. Crim. P. 32.6(b).

Rule 32.7(d), like Rule 4 of the § 2254 Rules and the § 2255 Rules, puts the

48

petitioner on notice of what is likely to happen if his petition fails to comply with Rule 32.6(a) and (b), because he has failed to state "every fact" that supports his claim. Ala. R. Crim. P. 32.7(d). The court, acting <u>sua sponte</u>, will examine the petition and summarily dismiss it if it fails to state a claim. If it fails to state a claim, the court will, as it did here with regard to Borden's first amended petition, freely grant the petitioner leave to amend.[36] <u>See</u> Ala. R. Crim. P. 32.7(b).

Reliance on a rule of "procedure" does not foreclose the possibility that a court is ruling "on the merits." The dismissal of a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), for example, unambiguously constitutes a ruling "on the merits." <u>See</u> <u>NAACP v. Hunt</u>, 891 F.2d 1555, 1560 (11th Cir. 1990) ("[T]he

---

[36] If the petitioner is unable to state a claim within the statutory time limit because he is unaware of the evidence that would support the claim, the Rule 32 form states, in paragraph 12.E., that he may nonetheless prosecute the claim if it meets the following requirements:

*Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:*
> *The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered . . . through the exercise of reasonable diligence; and*
> *The facts are not merely cumulative of other facts that were known; and*
> *. . . .*
> *If the facts had been known at the time of trial or sentencing, the result would probably have been different; and*
> *The facts establish that petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he did.*

Ala. R. Crim. P. 32 Appendix (emphasis in original).

49

Supreme Court has clearly stated that '[t]he dismissal for failure to state a claim . . . is a "judgment on the merits."'" (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3, 101 S. Ct. 2424, 2428 n.3, 69 L. Ed. 2d 103 (1981))). Similarly, a federal district court's dismissal of a claim under Rule 4 of the § 2254 Rules or the § 2255 Rules is a judgment on the merits of the claims stated in the petition or motion—or, stated more accurately, a judgment that the claims presented are nonmeritorious. See Granberry v. Greer, 481 U.S. 129, 135 n.7, 107 S. Ct. 1671, 1675–76 n.7, 95 L. Ed. 2d 119 (1987) ("Rule 4 authorizes a district judge summarily to dismiss a habeas petition if 'it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court.' . . . [T]he District Court's dismissal of a nonmeritorious petition under Rule 4 pretermits consideration of the issue of nonexhaustion."); see also Plunkett v. Johnson, 828 F.2d 954, 956 (2d Cir. 1987) ("When 'the applicant does not raise even a colorable federal claim,' [Granberry, 481 U.S. at 135, 107 S. Ct.] at 1675, that is a reason for reaching the merits and denying the petition, for this preserves judicial resources." (emphasis added)).

A ruling by an Alabama court under Rule 32.6(b) is also a ruling on the merits. Here, the Alabama Court of Criminal Appeals, in disposing of claims in the Amended Petition under Rule 32.6(b), necessarily considered the sufficiency of

50

such claims, focusing in on the factors for determining whether the petition presented a case sufficient to warrant relief under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In short, the Alabama Rules of Criminal Procedure authorize summary dismissal of claims under Rule 32.7(d) for failure to fact plead with sufficient specificity as required by Rule 32.6(b) and the form petition, much as the § 2254 Rules and the § 2255 Rules permit summary dismissal of claims under Rule 4 for failure to fact plead under Rule 2 and the federal form petition. Because such dismissals under the federal rules constitute rulings on the merits, we hold that a summary dismissal of a federal claim by Alabama courts for failure to comply with Rule 32.6(b) is similarly a ruling on the merits.

2.

Turning away from an abstract comparison of Alabama's post-conviction scheme to federal habeas rules, we must examine more closely the Alabama courts' actual disposition of Borden's relevant federal constitutional claims. Even if adjudications under Rule 32.6(b) were not categorically "on the merits," the Alabama Court of Criminal Appeals's ruling plainly shows that it did not rely on a procedural bar in dismissing Borden's relevant claims.

"[A] federal claimant's procedural default precludes federal habeas

51

review . . . only if the last state court rendering a judgment in the case rests its judgment on the procedural default." Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989) (citing Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S. Ct. 2633, 2638, 86 L. Ed. 2d 231 (1985)). In Card v. Dugger, 911 F.2d 1494 (11th Cir. 1990), this court articulated a three-part inquiry for determining whether a state court's rejection of a federal constitutional claim on supposed state procedural grounds will bar our subsequent review.[37] Because ambiguity often pervades state court opinions, the Supreme Court has devised a plain statement rule: "in determining . . . whether we have jurisdiction to review a case that is alleged to rest on adequate and independent state grounds, we merely

---

[37] An adequate and independent state ground will bar federal review if:

First, under Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989), the last state court rendering a judgment in the case must fulfill the "plain statement rule" of Michigan v. Long, 463 U.S. 1032, 1042 & n. 7, 103 S. Ct. 3469, 3477 & n. 7, 77 L. Ed. 2d 1201 (1983) and "clearly and expressly" state that it is relying on waiver as a ground for rejecting the petitioner's claim. Harris, 489 U.S. at 263, 109 S. Ct. at 1043. Second, the procedural rule relied on by the state court must serve as an independent state law ground for denying relief, and may not be intertwined with an interpretation of federal law. Caldwell v. Mississippi, 472 U.S. 320, 328, 105 S. Ct. 2633, 2639, 86 L. Ed. 2d 231 (1985); Ake v. Oklahoma, 470 U.S. 68, 75, 105 S. Ct. 1087, 1092, 84 L. Ed. 2d 53 (1985). Finally, the state's application of the procedural bar must be adequate. That is, it must not be applied in an arbitrary or unprecedented fashion, such that it thwarts federal court review of those who, "in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights." NAACP v. Alabama ex rel Patterson, 357 U.S. 449, 457-58, 78 S. Ct. 1163, 1169, 2 L. Ed. 2d 1488 (1958).

Card v. Dugger, 911 F.2d 1494, 1516 (11th Cir. 1990).

assume that there are no such grounds when it is not clear from the opinion itself that the state court relied upon" such grounds. Parker v. Sec'y for Dep't of Corr., 331 F.3d 764, 770–71 (11th Cir. 2003) (quoting Michigan v. Long, 463 U.S. 1032, 1042, 103 S. Ct. 3469, 3477, 77 L. Ed. 2d 1201 (1983)). Further, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, --- U.S. ----, 131 S. Ct. 770, 784–85 (2011) (citations omitted). A review of the Alabama Court of Criminal Appeals's disposition of the ineffective assistance claims at issue here indicates that the court ruled on the merits of those claims—that is, in determining that Borden failed to plead his claims with the specificity required by Rule 32.6(b), the court considered the underlying substance of his claims.

Here, the "last state court rendering a judgment in the case," Harris, 489 U.S. at 262, 109 S. Ct. at 1043, was the Court of Criminal Appeals in its August 22, 2003 Memorandum affirming the circuit court's August 27, 2002 Order on Remand.[38] Examining the reasoning of the Alabama Court of Criminal Appeals,

---

[38] Where the Court of Criminal Appeals does not explain its reasoning, we may alternatively evaluate the reasoning from the Order on Remand. We may do so based on the presumption that

53

we find ample evidence that the court did not expressly rely on a state procedural default when it affirmed the dismissal of Borden's relevant ineffective assistance of counsel claims. To the contrary, as discussed in part I.C., supra, the appeals court necessarily considered the merits of Borden's relevant claims.

First, we note that many of Borden's claims that are not at issue here were explicitly deemed "procedurally defaulted" in the Order on Remand under Rule 32.2 of the Alabama Rules of Criminal Procedure.[39] For example, Borden's claim

---

> [w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily on federal law," Coleman[ v. Thompson], 501 U.S. [722,] 740, 111 S. Ct. [2546,] 2559, [115 L. Ed. 2d 640 (1991),] we will presume that no procedural default has been involved by a subsequent unexplained order that leaves the judgment or its consequences in place.

Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991). This presumption is not irrebuttable; "strong evidence can refute it." Id. at 804, 111 S. Ct. at 2595. No such evidence exists here.

[39] Rule 32.2 is entitled "**Preclusion of Remedy**," and it reads in part:

(a) **Preclusion of Grounds**. A petitioner will not be given relief under this rule based upon any ground:
(1) Which may still be raised on direct appeal under the Alabama Rules of Appellate Procedure or by post-trial motion under Rule 24; or
(2) Which was raised or addressed at trial; or
(3) Which could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b); or
(4) Which was raised or addressed on appeal or in any previous collateral proceeding; or
(5) Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b).
. . . .

Ala. R. Crim. P. 32.2.

that pretrial publicity made it impossible for him to receive a fair trial was deemed "barred from review because Borden raised [it] at trial but not on appeal." (emphasis added). Four other claims were dismissed by the circuit court on this ground. Further, fourteen claims were declared "barred from review by [Borden's] failure to raise them at trial and then on direct appeal" under Rule 32.2(a) of the Alabama Rules of Criminal Procedure. Borden apparently did not appeal these claims to the Court of Criminal Appeals, which deemed them waived and declined to review them. We note the disposition of these claims only to emphasize that the Alabama state courts appear fully capable of utilizing adequate and independent state procedural rules to avoid review of federal claims when they wish to do so.

In contrast, the claims that we address today were dismissed under Rule 32.6(b) because they were not pled with sufficient specificity. The claim from Borden's Amended Petition that hews most closely to the issue presented in the COA is found in paragraphs 65–67 of the petition, which alleged that "Trial Counsel Failed to Call Any Witnesses at All Regarding Mr. Borden's Mental Health." See supra part I.C. The Court of Criminal Appeals addressed this claim:

> The trial court correctly dismissed the allegations in Claim II.B for failing to meet the requirements of Rule 32.6(b), Ala. R. Crim. P. Borden failed to identify what type of mental health expert he believed should have been presented at the sentencing phase, or how that expert's testimony would have differed from the testimony presented at the guilt phase. He further presented no legal basis to

55

support his claim, only a bare conclusion that the testimony was necessary. More is necessary to satisfy the pleading requirements of Rule 32, Ala. R. Crim. P., and dismissal of this portion of Claim II was proper.

We simply cannot say that the Court of Criminal Appeals clearly relied on a procedural bar in dismissing these claims. The Court of Criminal Appeals plainly utilized Rule 32.6(b) as a tool with which to address the merits of Borden's claims, as discussed in part II.A.1, supra. Given this scenario, we do what the Second Circuit did in Green v. Travis, 414 F.3d 288, 295–96 (2d Cir. 2005); we examine the ineffective assistance of counsel allegations that were before the Court of Criminal Appeals under the standards set forth by AEDPA. See infra part II.B. That is, accepting as true the facts asserted in support of Borden's ineffective assistance of counsel claims, did the Alabama Court of Criminal Appeals unreasonably apply Strickland and its progeny?

3.

Moreover, the nature of Rule 32.6(b) is not a matter of first impression for this court. In Powell v. Allen, 602 F.3d 1263 (11th Cir. 2010), we explicitly held that an Alabama court adjudicating Rule 32 ineffective assistance of counsel claims necessarily considered questions of federal law, thereby rendering Rule 32—at least in the context of summary dismissals that require some assessment of the merits of federal constitutional claims—insufficiently independent to preclude

56

federal review of state court decisions. According to the court in <u>Powell</u>:

> The Rule 32 court, affirmed by the state appellate court, found that [petitioner] failed to plead facts on which an ineffective assistance claim could be based and, for that reason, denied [petitioner's] claim and request for an evidentiary hearing. See <u>Boyd v. State</u>, 913 So. 2d 1113, 1125 (Ala. Crim. App. 2003) (only when "facts are pleaded, which, if true, entitle a petitioner to relief, [is] the petitioner then entitled to an opportunity, as provided in Rule 32.9, Ala. R. Crim. P., to present evidence proving those alleged facts." (citing Ala. R. Crim. P. 32.6) (emphasis omitted)). <u>We thus review the Rule 32 court's rejection of [petitioner's] claim as a holding on the merits</u>. <u>Judd [v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)]; <u>Stokes v. Anderson</u>, 123 F.3d 858, 860 (5th Cir. 1997) (finding no procedural bar from state court ruling on similar pleading rule because the ruling "require[d] some evaluation, however, cursory, of the merits of a petitioner's claim").

<u>Id.</u> at 1272–73 (emphasis added) (footnote omitted). In short, an Alabama court's consideration of the sufficiency of the pleadings concerning a federal constitutional claim contained in a Rule 32 petition necessarily entails a determination on the merits of the underlying claim; we cannot construe such a rule to be a state procedural bar that would preclude our review. We therefore must review the merits determination of the Court of Criminal Appeals under the deferential standards set forth in AEDPA, discussed below.[40]

_____

[40] The State and Borden vigorously debate whether Rule 32 is sufficiently "firmly established and regularly followed" to serve as an adequate state procedural rule, the application of which would bar federal review. <u>James v. Kentucky</u>, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835, 80 L. Ed. 2d 346 (1984); <u>see also</u> <u>Lee v. Kemna</u>, 534 U.S. 362, 385, 122 S. Ct. 877, 890, 151 L. Ed. 2d 820 (2002). Having found that Rule 32.6(b) summary dismissals are rulings "on the merits," and that the Alabama Court of Criminal Appeals did not speak clearly enough to warrant the application of a procedural bar, it is unnecessary for this court to wade into this

B.

AEDPA, by its plain language and as interpreted by the Supreme Court, limits the scope of federal habeas review of state court judgments in the spirit of furthering "comity, finality, and federalism." Michael Williams v. Taylor, 529 U.S. 420, 436, 120 S. Ct. 1479, 1490, 146 L. Ed. 2d 435 (2000). Section 2254(d) of Title 28 states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Before elaborating on the application of 28 U.S.C. § 2254, it is essential to establish precisely what allegations our review covers. As this court stated in Powell:

> AEDPA limits our review to whether the state court's determination that [the petitioner] failed to plead sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of counsel was contrary to or an unreasonable application of Supreme Court precedent. Thus, we look only to the allegations in [petitioner's] Rule

debate.

58

32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel.

602 F.3d at 1273 (emphasis added).   Logically, that court could only undertake an "adjudication of the claim" that was presented to it; we believe that a review of a state court adjudication on the merits in light of allegations not presented to the state court—for example, by examining additional facts or claims presented for the first time in a petitioner's federal habeas petition—would insufficiently respect the "historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts."  Michael Williams, 529 U.S. at 436, 120 S. Ct. at 1490.  We therefore follow the reasoning of Powell and examine the reasonableness of the Court of Criminal Appeals's adjudication of Borden's claims based upon the allegations contained in his Amended Petition.  See also Cullen v. Pinholster, 563 U.S. ---- (2011) (slip op. at 9) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

The Supreme Court has given significant guidance as to the application of § 2254(d)(1) in the review of state court merits adjudications.  First, under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of

59

materially indistinguishable facts." Terry Williams v. Taylor, 529 U.S. 362, 412–13, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000). Because the Court of Criminal Appeals clearly did not reach such a conclusion, we focus our analysis on the "unreasonable application" clause of § 2254(d)(1).

The "unreasonable application[] of clearly established Federal law" clause within § 2254(d)(1) "permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534–35, 156 L. Ed. 2d 471 (2003) (quoting Terry Williams, 529 U.S. at 413, 120 S. Ct. at 1523). "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Id. at 520, 123 S. Ct. at 2535 (quoting Lockyer v. Andrade, 538 U.S. 63, 76, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003)). Importantly, for a federal habeas court to find a state court's application of Supreme Court precedent "unreasonable," it is not enough that the state court's adjudication be only "incorrect or erroneous"; it must have been "objectively unreasonable." Id. at 520–21, 123 S. Ct. at 2535 (internal citations omitted).

Recently, the Supreme Court has reiterated the deferential nature of our

review under AEDPA in a situation analogous to Borden's: "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004)). Indeed, "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. at 788 (citations omitted) (internal quotation marks omitted).[41]

## III.

Our task, finally, is to evaluate whether the Court of Criminal Appeals's determination that Borden's relevant ineffective assistance of counsel claims were due to be dismissed for failure to state a claim with sufficient specificity under Rule 32.6(b) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

---

[41] Moreover, it matters not for our analysis whether the Court of Criminal Appeals resolved Borden's claim under Strickland or under a state rule. See Early v. Packer, 537 U.S. 3, 123 S. Ct. 362, 154 L. Ed.2d 263 (2002). Compliance with the "contrary to" language of AEDPA "does not require citation of the [Supreme Court's] cases—indeed, it does not even require awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Id. at 8, 123 S. Ct. at 365.

The right of a state criminal defendant to effective assistance of counsel springs from the Sixth and Fourteenth Amendments to the United States Constitution, and such a right has been clearly established and roundly reaffirmed by the Supreme Court.  We analyze Borden's claim under the rubric set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and its progeny.  Strickland requires us to apply a familiar two-part inquiry:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S. Ct. at 2064.  While we undertake a cursory examination of the performance of Borden's counsel under the "performance prong" of Strickland, we note at the outset that we "may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied."  Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).  "[T]here is no reason for a court deciding an ineffective assistance of counsel claim . . . to address both components

62

of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

A.

Under Strickland's first prong, "[t]o be found deficient, capital counsel's performance must be 'outside the wide range of professionally competent assistance.'" Powell v. Allen, 602 F.3d 1263, 1273 (11th Cir. 2010) (quoting Strickland, 466 U.S. at 690, 104 S. Ct. at 2066). To perform within constitutional bounds, defense counsel must conduct a reasonable investigation in relation to their representation. Id. (citing Strickland, 466 U.S. at 690–91, 104 S. Ct. at 2066). In short, as this court stated in Powell:

> [O]nly when counsels' choices are made after a "thorough investigation of law and facts relevant to plausible options" are those choices "virtually unchallengeable." [Strickland, 466 U.S.] at 691, 104 S. Ct. [at 2066]. When, however, "strategic choices [are] made after less than complete investigation [they] are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690–91, 104 S. Ct. [at 2066]. Thus, at bottom, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." Id. at 691, 104 S. Ct. [at 2066]. This means that when we assess the attorney's decision not to investigate, we "must consider . . . whether the known evidence would lead a reasonable attorney to investigate further." Wiggins v. Smith, 539 U.S. 510, 527, 123 S. Ct. 2527, [2538,] 156 L. Ed. 2d 471 (2003).

Id.

63

As discussed in part I.C, <u>supra</u>, Borden raised several allegations in his Amended Rule 32 Petition regarding the performance of his counsel at the penalty phase of his trial. With regard to the investigation undertaken in preparation for the penalty phase, Borden claimed that his counsel "fell far short of th[e] constitutionally required mandate" that counsel present to the judge and jury "all aspects of his background, family life, medical history, school records, and any other life-experience that may be considered mitigating evidence." Citing American Bar Association guidelines, Borden further asserted that his penalty phase counsel failed to obtain "complete and accurate information relevant to Mr. Borden's medical history, educational history, employment and training history, family and social history, his correctional history, and any religious or cultural influences." Additionally, Borden faulted his counsel for failing to interview "adequately" his family, friends, acquaintances, and other potential witnesses.

Borden's Amended Petition also addressed his counsel's actual performance at the penalty phase, arguing that counsel failed to present mitigating evidence that was available even absent any investigation. Further, Borden alleged that his counsel were constitutionally ineffective as a result of their failure to present "testimonial evidence from any of Mr. Borden's mental health care providers."

Ultimately, we decline to conclusively determine whether Borden's penalty

64

phase counsel's investigation and preparation met the constitutionally mandated bar for performance as set under Strickland. Certainly, an evidentiary hearing—where counsel, Borden's family members, treating physicians, and other potential witnesses would testify regarding the thoroughness of the investigation—would settle this matter decisively. But given Borden's failure to specifically plead any prejudice flowing from the allegedly deficient performance as required by the Alabama Rules of Criminal Procedure, as discussed in part III.B, infra, we need not render a final judgment on the performance of penalty phase counsel in the preparation and investigation for Borden's defense.

We think it important to note here that a counsel's failure to satisfactorily investigate potential mitigating factors does not give rise to a presumption of prejudice.[42] "[A] presumption of prejudice would be proper where counsel's representation was so deficient as to amount in every respect to no representation at all." Blake v. Kemp, 758 F.2d 523, 533 (11th Cir. 1985) (citing Adams v. Balkcom, 688 F.2d 734, 739 n.1 (11th Cir.1982)); see also Strickland, 466 U.S. at 692, 104 S. Ct. at 2067 ("In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is

---

[42] We address this issue because Borden, in his Amended Petition, cites Blake v. Kemp, 758 F.2d 523 (11th Cir. 1985), for the proposition that there is a "presumption of prejudice where trial counsel made no effort to prepare for the penalty phase of a capital trial."

legally presumed to result in prejudice. . . . Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." (citations omitted)). Nowhere did Borden plead anything close to a "constructive denial of the assistance of counsel altogether." And, reviewing the record, we cannot say that Borden was so denied; his counsel at the penalty phase presented four witnesses, each of whom provided relevant testimony in an attempt to provide support for three potential, statutorily enumerated, mitigating circumstances. To extend to Borden a presumption of prejudice here would be to eviscerate Strickland's well-worn central holding and collapse the Sixth Amendment ineffective assistance of counsel test into a single-pronged inquiry. We decline to do so.

As such, we must undertake an analysis of whether Borden suffered prejudice flowing from the allegedly deficient performance of his counsel.

B.

To establish prejudice under Strickland, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S. Ct. 2067. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

66

probability is a probability sufficient to undermine confidence in the outcome."

Id. at 694, 104 S. Ct. at 2068.  In Borden's case, we must determine whether the facts pled in his Amended Petition establish that, had his counsel conducted a reasonable investigation and presented additional mitigating evidence, there is a reasonable probability that the jury would have recommended—and the judge would have imposed—a sentence of life without parole.  Or, more accurately, we must determine whether the Court of Criminal Appeals's determination that his Amended Petition failed to sufficiently plead such facts—in light of Alabama's fact pleading post-conviction regime discussed in part II.A, supra—was "contrary to, or involved an unreasonable application of, clearly established Federal law."

A review of the Amended Rule 32 Petition leads us to the conclusion that Borden has not carried the burden of making this showing.  A comparison of the allegations made in the Amended Petition to the types of facts that the Supreme Court has found sufficient to establish prejudice under Strickland in analogous situations is instructive.

In Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003), the Supreme Court granted the writ where a counsel's failure to adequately investigate additional mitigating evidence prejudiced the petitioner.  The "powerful" undiscovered mitigating evidence led the Court to conclude that, had it

67

been discovered and presented to the jury, there was a reasonable probability that the result of the proceeding would have been different. Id. at 534, 123 S. Ct. at 2542–43 (citations omitted). State post-conviction proceedings in Wiggins uncovered a brutal and tragic life for the petitioner, Wiggins:

> [P]etitioner's mother, a chronic alcoholic, frequently left Wiggins and his siblings home alone for days, forcing them to beg for food and to eat paint chips and garbage. Mrs. Wiggins' abusive behavior included beating the children for breaking into the kitchen, which she often kept locked. She had sex with men while her children slept in the same bed and, on one occasion, forced petitioner's hand against a hot stove burner—an incident that led to petitioner's hospitalization. At the age of six, the State placed Wiggins in foster care. Petitioner's first and second foster mothers abused him physically, and, as petitioner explained to [a social worker], the father in his second foster home repeatedly molested and raped him. At age 16, petitioner ran away from his foster home and began living on the streets. He returned intermittently to additional foster homes, including one in which the foster mother's sons allegedly gang-raped him on more than one occasion. After leaving the foster care system, Wiggins entered a Job Corps program and was allegedly sexually abused by his supervisor.

Id. at 516–17, 123 S. Ct. at 2533 (internal citations omitted).

Similarly, in Rompilla v. Beard, 545 U.S. 374, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005), the Supreme Court held that a defense counsel's failure to make a reasonable investigation sufficiently prejudiced the petitioner to warrant habeas relief. The facts that defense counsel failed to uncover and present were summarized by the Court:

68

Rompilla's parents were both severe alcoholics who drank constantly. His mother drank during her pregnancy with Rompilla, and he and his brothers eventually developed serious drinking problems. His father, who had a vicious temper, frequently beat Rompilla's mother, leaving her bruised and black-eyed, and bragged about his cheating on her. His parents fought violently, and on at least one occasion his mother stabbed his father. He was abused by his father who beat him when he was young with his hands, fists, leather straps, belts and sticks. All of the children lived in terror. . . . His father locked Rompilla and his brother Richard in a small wire mesh dog pen that was filthy and excrement filled. He had an isolated background, and was not allowed to visit other children or to speak to anyone on the phone. They had no indoor plumbing in the house, he slept in the attic with no heat, and the children were not given clothes and attended school in rags.

Id. at 391–92, 125 S. Ct. at 2468–69 (quoting Rompilla v. Horn, 355 F.3d 233, 279 (3d Cir. 2004) (dissenting opinion) (citations omitted)).

Borden's allegations stand in stark contrast to the allegations in Wiggins and Rompilla. Even if we assume that his counsel failed completely to investigate additional mitigating evidence, therefore removing any of the decisions to present or not present evidence from the safe harbor of "strategic choices" that are "virtually unchallengeable," see Wiggins, 539 U.S. at 521, 123 S. Ct. at 2535, there are simply no facts presented in the Amended Petition that would warrant a finding of prejudice and therefore habeas relief—only "bare allegation[s] . . . and mere conclusions of law," Ala. R. Crim. P. 32.6(b). The following quotes from Borden's Amended Petition are illustrative of the level of specificity with which he

pled his claims in support of a finding of prejudice under <u>Strickland</u>: "Trial counsel's deficient performance prevented the jury and the trial court from hearing and considering an abundance of mitigating evidence . . . ."; "Mr. Borden was entitled to have all aspects of his background, family life, medical history, school records, and any other life-experience that may be considered mitigating evidence presented to the jury and judge at the penalty phase of his capital trial"; "effective preparation and investigation by defense counsel would have revealed a host of mitigating factors, which should have been presented at Mr. Borden's penalty phase"; "Mr. Borden's parents both possessed information that would have been useful to Mr. Borden's defense"; "other people . . . would have been able to present a complete portrait of Mr. Borden, which would have lessened his culpability for the crime, revealed numerous mitigating circumstances, and led the jury to impose a lesser sentence of life without possibility of parole"; a review of the records and interviews with "potential witnesses who were willing to testify . . . could have established numerous mitigating factors that could have swayed the jury to a finding of life in prison rather than death"; and, with regard to the specific allegation that counsel should have called Borden's treating physicians at the penalty phase, "[m]ental health testimony would have played an important part in Mr. Borden's mitigation case, given the reduced level of mental health deficiency

70

necessary to create a mitigating condition."[43]

Considering these pleadings, we simply cannot say that the Alabama Court of Criminal Appeals's determination that the allegations put forth by Borden were due to be summarily dismissed was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).[44] Nowhere in his Amended Petition does Borden plead facts that would tend to show that he was prejudiced by his counsel's allegedly deficient performance. Indeed, we have no substantive factual allegations that we may properly assess. It seems patent that, at the very least, "'fairminded jurists could disagree' on the correctness of the

[43] While our review is limited to the Amended Rule 32 Petition presented to the state courts on collateral review, we note that Borden's habeas petition, while more specific, does not plead new facts that would serve to make a strong showing of prejudice. In essence, the habeas petition summarizes evidence contained in Borden's medical records—records which were admitted into evidence at trial, made fully available to the jury, and discussed by experts at the guilt phase of Borden's trial. It also includes some new allegations, such as the claim that Mr. Borden was "plagued by physical and mental abuse, caused by his parents, family members, and acquaintances." We decline to address these additional allegations.

[44] We note that Borden also claimed that his counsel were constitutionally ineffective because they failed to investigate and present evidence of his significant religious activities to the jury at the penalty phase of his trial. This claim falls within the expanded COA. See supra note 25. The Alabama Court of Criminal Appeals treated this claim differently than all of Borden's other relevant claims; rather than find it insufficiently pled, the Court of Criminal Appeals summarily dismissed it under Rule 32.7(d) because it failed to present a material issue of law or fact.

This dismissal was on the merits, and therefore subject to AEDPA review by this court. Upon review of the record and the Court of Criminal Appeals's opinion, we hold that the dismissal of this claim was not an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). Because the remainder of Borden's claims covered by the COA were dismissed under Rule 32.6(b), and because the parties emphasized the operation of Rule 32.6(b) in their briefs and at oral argument, we have focused our attention on Borden's claims that were dismissed as insufficiently pled.

71

state court's decision." Harrington v. Richter, --- U.S. ----, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004)). We therefore cannot grant habeas relief. To grant habeas here would be to open the door to habeas relief for any petitioner who files a boilerplate, unspecific petition for collateral relief. We are convinced that Supreme Court precedent would not support such an approach.

We are not blind to the possibility that testimony from Borden's treating physicians at the penalty phase of his trial could have strengthened his ability to fully present the mitigating circumstances he sought to prove to the jury; while the jury had access to Borden's complete medical history and defense counsel urged the jurors to review this history, we can imagine that hearing testimony from his doctors could have provided a more in-depth view of Borden's mental state over the years. But our inquiry into Strickland prejudice requires that we find more than a possibility that the jury could have benefitted from additional testimony that would shed light on evidence already produced for their review. As indicated above, it requires that there be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland. 466 U.S. at 694, 104 S. Ct. at 2068. Viewed through the further deferential lens of AEDPA, Borden's allegations do not satisfy this "doubly"

72

demanding standard of review. Harrington, 131 S. Ct. at 788.

Further, our conclusion comports with the similar Eleventh Circuit case Powell v. Allen, 602 F.3d 1263 (11th Cir. 2010). In Powell, the Alabama state courts applied Rule 32.6(b) to deny the petitioner's ineffective assistance of counsel claims brought in a petition for post-conviction relief. The petitioner, Powell, was not granted an evidentiary hearing by either the state courts or the federal district court. Id. at 1267–68. Regarding claims analogous to the ones we face today—that counsel failed to sufficiently investigate and present mitigating factors at the penalty phase—the Powell court stated:

> Powell argues that his trial counsel should have obtained the testimony of his teachers or school records, because he asserts that "school records, military records, health records, employment records, correctional records, and religious records of both Mr. Powell and his parents and his siblings" were available and would have presented a complete picture of his life. However, Powell did not allege in his Rule 32 petition what any such records would show other than to make the conclusory allegation that such records would have revealed "numerous mitigating circumstances." He does not, however, allege what those mitigating circumstances are. As such, we cannot conclude that the Rule 32 court's dismissal of Powell's ineffective assistance claim was an unreasonable application of Strickland.

Id. at 1275. Borden's claims are no less conclusory than those presented by the petitioner in Powell, and, as such, we similarly cannot conclude that the Court of Criminal Appeals's dismissal of Borden's claims was an unreasonable application of clearly established federal law.

73

IV.

Finally, the COA asks that we determine whether a claim of ineffective assistance of counsel may be based on the "cumulative effect" of multiple non-prejudicial errors by counsel when no individual error standing alone would warrant a finding of prejudice under Strickland. Because Borden has not sufficiently pled facts that would establish prejudice—cumulative or otherwise—we decline to elaborate further on the concept of "cumulative effect" for fear of issuing an advisory opinion on a hypothetical issue.

Accordingly, the district court's decision denying Borden's petition for a writ of habeas corpus is hereby

AFFIRMED.

WILSON, J., concurring in part, dissenting in part:

In light of <u>Cullen v. Pinholster</u>, — U.S. — , 131 S. Ct. 1388 (2011), I concur

in the result reached by the majority with respect to most of Borden's claims.[1]  I

offer this separate opinion, however, to address two concerns regarding the Court's

analysis.

<u>1.  Alabama Rule of Criminal Procedure 32.6(b)</u>

The majority holds that "a summary[2] dismissal of a federal claim by

Alabama courts for failure to comply with Rule 32.6(b) is . . . a ruling on the

merits."  Majority Op. at 52.  I disagree with that categorical approach.

To begin, I agree with the majority that, in substance, select applications of

Rule 32.6(b) in this case were essentially merits adjudications.  Others, however,

were clearly not, as demonstrated by the Alabama Court of Criminal Appeals's

language specifically disclaiming that those rulings were merit-based.  Here are but

a few examples:

---

[1]  As indicated below, I believe two of Borden's claims require remand to the district court—the first, because it received no adjudication on the merits in state court; and the second, because the state court's disposition was an unreasonable application of clearly established federal law.  <u>See</u> notes 23 & 25, <u>infra</u>.

[2]  Courts use the label "summary" to describe both dismissals made after the pleading(s), but without further proceedings, and dismissals (or denials) that are unaccompanied by written explanations.  <u>Compare</u> Majority Op. at 42–43, <u>with</u> <u>Harrington v. Richter</u>, — U.S. —, 131 S. Ct. 770, 783 (2011).  In this case, I use "summary dismissal" in the same fashion as the majority: to refer to pleading-stage dismissals.

75

The circuit court addressed the merits of this claim, finding that the evidence overwhelmingly established that Borden murdered the two victims and that counsel conceded that fact and focused on a defense of insanity and lack of mental capacity. The trial court determined that Borden could not demonstrate prejudice and that his petition failed to state a claim for relief, so that summary dismissal was appropriate. We adopt the court's findings of fact and conclusions of law as an alternative holding, but find that the claim was not sufficiently pleaded and need not have been addressed on the merits.[3]

* * *

Therefore, in addition to failing to plead the claim with sufficient specificity, Borden has failed to state a claim which would have entitled him to relief.[4]

* * *

Thus, the claim was subject to summary dismissal for failure to satisfy the pleading requirements. Moreover, as the trial court found, the claim was meritless. . . . Summary dismissal of Claim I.L. was proper for this additional reason.[5]

* * *

The claim regarding defense counsel's argument on the legal standard for insanity failed to satisfy the pleading requirements of Rule 32.3 and Rule 32.6(b), Ala. R. Crim. P., and it was due to be summarily dismissed. Even if we had addressed the claim on the merits, we would not have found that Borden was entitled to any relief . . . .[6]

---

[3] Borden v. State, No. CR-00-1379 at 9 n.3 (Ala. Crim. App. Aug. 22, 2003) (emphasis added). For convenience, the remainder of the citations to the Court of Criminal Appeals's opinion will indicated by "CCA Op. at __".

[4] CCA Op. at 13 (emphasis added).

[5] CCA Op. at 14 (emphasis added).

[6] CCA Op. at 20 (emphasis added).

76

* * *

We adopt the trial court's holding on the merits <u>as an alternative holding to our primary determination that the claim was not pleaded with specificity</u> and was due to be dismissed.[7]

* * *

The trial court addressed this claim on the merits and denied it, finding both that Borden failed to allege any prejudice and that most of the information Borden alleged his father would have conveyed in his testimony was presented to the jury by other witnesses. . . . We agree with the trial court's analysis of this claim, and adopt its holding <u>as an alternative holding</u> to our primary determination that the claim was not sufficiently pleaded.[8]

* * *

Even if the claim had not been subject to dismissal based on inadequate pleading, <u>summary dismissal would have been proper because it was meritless.</u>[9]

At one point, the Court of Criminal Appeals even reversed a trial-court ruling that a particular claim "was sufficiently pleaded, but lacked merit," deciding instead that the claim did not, in fact, conform with Rule 32.6(b)'s specificity requirement and was due to be dismissed on <u>that</u> basis. CCA Op. at 28 & n.11. Consequently, at least with respect to a large number of its Rule 32.6(b) rulings, I believe the Court of Criminal Appeals intended those rulings to be strictly procedural, not

---

[7] CCA Op. at 23 n.8 (emphasis added).

[8] CCA Op. at 25 (emphasis added).

[9] CCA Op. at 27 (emphasis added).

merit-based.[10]

The majority rightly notes that some rules nominally categorized as "procedural" may actually adjudicate substance, such as Federal Rule of Civil Procedure 12(b)(6). See Majority Op. at 50. The majority takes just such a view of Rule 32.6(b): "[T]he Alabama Court of Criminal Appeals, in disposing of claims in the Amended Petition under Rule 32.6(b), necessarily considered the sufficiency of such claims, focusing in on the factors for determining whether the petition presented a case sufficient to warrant relief under Strickland v. Washington . . . ." Majority Op. at 51. In the abstract, this proposition makes good sense. Presumably, a "specificity" bar would hang lower than the threshold for successfully stating a claim that would entitle the petitioner to either relief or

---

[10] Our Seventh Circuit colleagues recently addressed a similar question in Kerr v. Thurmer, 639 F.3d 315 (2011). Faced with a state court dismissal of a claim that was deemed too "underdeveloped" to warrant a merits ruling, the Seventh Circuit decided that such a dismissal was not on the merits, but was simply procedural. Id. at 326 ("[I]f the state court issues a summary order that denies a petition for post-conviction relief and in the order it furnishes a procedural reason for its decision . . . , then we must take the state court at its word and treat the decision as procedural, not merits-based."). Though I part ways with Kerr's additional determination that such a procedural ruling constituted an independent and adequate state ground that precludes federal merits consideration, see Card v. Dugger, 911 F.2d 1494, 1516–17 (11th Cir. 1990) (explaining what constitutes an independent and adequate state ground of decision); Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997) (determining that a specificity requirement such as that at issue in this case was not an "independent" state ground barring federal habeas relief), I agree with its sentiment that we should treat state court rulings as they were intended. See Wilson v. Workman, 577 F.3d 1284, 1293 (10th Cir. 2009) (en banc) ("While [AEDPA] vindicates goals such as federalism and comity by affording great deference to state court decisions, it prescribes deference only for decisions the state court has actually made.").

further proceedings. Therefore, by failing to plead his claim with sufficient specificity under Rule 32.6(b), Borden would necessarily fail to state a claim for relief. Unfortunately, at least as the rule was applied here, that proposition appears not to have been reflected in practice.

Both the trial court's Order on Remand and the Court of Criminal Appeals's Memorandum Opinion divided their resolutions of Borden's claims into two distinct camps: (1) claims that were dismissed as insufficiently pled under Rule 32.6(b); and (2) claims that were denied on the merits in light of the prevailing legal standard set forth in Strickland.[11] It was only after ruling that many of Borden's claims failed to conform to Rule 32.6(b)'s specificity requirement and dismissing them accordingly that the Court of Criminal Appeals addressed Strickland. It began a new section of its opinion with the following words:

> The trial court determined that several of the claims of ineffective assistance of counsel Borden raised in his petition were not procedurally barred and that they contained a sufficient factual basis to avoid summary dismissal pursuant to Rule 32.6(b), Ala. R. Crim. P. The court considered each of the claims and determined, for the reasons discussed below, that the claims were due to be denied.

CCA Op. at 32. The court then launched into a thorough summary of the legal

---

[11] For simplicity's sake, I leave aside a third category of dismissals: claims properly dismissed on undisputed grounds of procedural bar, such as failure to raise certain claims on direct appeal, etc. None of those claims are relevant to this appeal.

79

standards governing ineffective assistance claims, quoting at length from

Strickland itself and culminating in the following statement:

> With these legal standards in mind, we review the merits of the remaining allegations of ineffective assistance of counsel.

Id. at 34 (emphasis added).

The court proceeded to do just that, analyzing Borden's remaining claims in ways that bore the clear hallmarks of summary, merit-based adjudications. See, e.g., id. at 35 ("The trial court correctly determined that Borden established neither deficient performance nor prejudice as to this claim."). And whereas these later rulings clearly evaluated the sufficiency of Borden's allegations in light of Strickland, most of those that came before—the 32.6(b) rulings—appeared to not.

Upon my initial review of this case, I took the same view as the majority. After all, what metric would the state court use to measure the sufficiency of the pleadings other than the substantive yardstick of Strickland? However, after poring over the state court decisions, I was left with the distinct impression that many of the evaluations actually made were not based on substance, but rather on form—driven, not by the allegations' sufficiency in relation to the governing substantive law, but instead their conformity with some hypothetical pleading rubric or formula.

For example, Borden was death-eligible only because the trial court found the existence of a sole aggravating factor: "The defendant knowingly created a great risk of death to many persons." Ala. Code § 13A-5-49(3). In his Amended Rule 32 Petition, Borden argues his penalty-phase counsel was ineffective for failing to object when the prosecutor mischaracterized that aggravating factor for the jury, as well as for failing to challenge that the prosecutor had, in fact, proven the required mental state.[12] See Amended Petition ¶¶ 68–69, 71–73. Borden quoted the statutory language. Id. ¶ 71. He recited the prosecutor's mischaracterization of that language. Id. ¶ 72. He indicated that he believed the mischaracterization of law "was harmful . . . because it misrepresented a lower degree of recklessness than what is legally required. . . ." Id. ¶ 73. And he argued that "the state never presented any evidence that Mr. Borden knew there were any people in the house." Id. ¶ 68. He even stated that had this factor been successfully challenged, "the death penalty would not have even been an option for

---

[12]  At the penalty phase, the prosecutor had simply presented evidence that there were people in the house and that they were positioned such that they may have been in harm's way. There was no direct evidence presented that Borden was aware of how many persons were in the house. While arguing to the jury, the prosecutor paraphrased the aggravating factor to eliminate the scienter requirement and imply that Borden simply had to cause a grave risk of death to "a number of," as opposed to "many," people. In full, the cited comment by the prosecutor reads:

> You can tell from what you've already heard and what you've seen
> that when you fire a gun and .380 bullets blazing through a house that
> you can easily kill more than the people that you intend to kill. You
> create a grave great risk of death to a number of people.

81

the jury."  Id. ¶ 69.

Nevertheless, the Court of Criminal Appeals found that these arguments

were due to be dismissed pursuant to Rule 32.6(b)'s specificity requirement,

reasoning:

> Borden failed to present a full disclosure of the factual
> basis for the ground for relief.  Moreover, he presented
> mere conclusions based on the few facts he provided.
> Because these allegations do not satisfy the pleading
> requirements of Rule 32.6(b), Ala. R. Crim. P., the
> allegations in Claim II.C. were properly dismissed.

CCA Op. at 26.  Or:

> This claim was due to be dismissed because it failed to
> satisfy the specificity requirements of Rule 32.6(b), Ala.
> R. Crim. P. . . . .
> Borden failed to plead any facts indicating how he
> was prejudiced by trial counsel's failure to object to this
> alleged mischaracterization of law.  Therefore, the claim
> was not pleaded with sufficient specificity and it was due
> to be dismissed without further proceedings.

CCA Op. at 27.  And after making these 32.6(b) rulings, the Court of Criminal

Appeals went on to conduct merits analyses, in the alternative.

I have trouble conceiving of how Borden could have been more specific than

he was, or how he could have "failed to present a full disclosure of the factual basis

for relief."  I am even more puzzled as to how the court could have believed that

Borden failed to indicate in what way he was prejudiced by counsel's alleged

82

failure to object. The prejudice was not only explicitly pled, it was patently obvious. This was the sole aggravating factor supporting Borden's death sentence; the prosecutor presented no evidence regarding an essential element; and the prosecutor described the aggravating factor to the jury in a way that eliminated the scienter requirement and relaxed the numerical threshold for persons threatened with harm.[13]

In light of this application and many others like it, I am at a loss to explain the operation of Rule 32.6(b).[14] Under these circumstances, I simply cannot join

---

[13] To offer another example, Borden claimed that counsel was ineffective for failing to object to the prosecutor's improper interjection of his personal opinion during closing argument. He provided a legal basis for the claim, complete with citations to state and federal cases, and then cited to two pages of the trial transcript where "the prosecutor made statements of personal opinion concerning Mr. Borden in direct contradiction of the law, as described above."

The Court of Criminal Appeals, however, found that this claim "was not pleaded with sufficient specificity as required by Rule 32.6(b)," stating: "Borden cites to two pages of the record, but he does not identify which of the prosecutor's statements he finds objectionable. Nor does he make a specific allegation regarding the alleged impropriety of any of the prosecutor's statements contained on those two pages." CCA Op. at 15 (footnote omitted).

Borden's claim on this front is certainly meritless. But it is incorrect to say that he has not made "a clear and specific statement of the grounds upon which relief [was] sought." Rule 32.6(b). Borden stated exactly why the prosecutor's comments were allegedly improper, and he directed the court to a specific two pages of the lengthy trial record. On those pages, there is but one statement of personal opinion offered by the prosecutor: "When they took him off [his medication], he got better, which I think is evidence of the fact that there wasn't anything wrong with him." Trial Transcript at 1037.

[14] My confusion is compounded by the fact that, so far as I am aware, summary adjudications "on the merits" can take one of only two forms. Either the petitioner's allegations, as pled, are insufficient, meaning that the petitioner has failed to state a claim for relief under the relevant standard of pleading. Or, despite the allegation's facial sufficiency in the abstract, the broader record forecloses any actual possibility of relief. It is worth noting that Alabama Rule of Criminal Procedure 32.7(d)—the provision that provides for summary dismissal of claims and enforces Rule 32.6(b)'s specificity requirement—explicitly provides for both of these merit-based grounds for dismissal in addition to "specificity":

83

the majority's determination that Rule 32.6(b) dismissals categorically constitute rulings on the merits. Specificity rulings may often subsume a substantive evaluation of a claim's merit in exactly the way the majority perceives. And I agree that where the record supports such a reading, we should treat those rulings as adjudications on the merits under AEDPA. However, if it instead appears that a rule is being applied procedurally, simply to object to a defect in form that does not preclude the possibility that the petitioner has in fact asserted the substance of a colorable federal claim, it simply cannot be credited as a ruling on the merits. See Childers v. Floyd, — F.3d —, No. 08-15590, slip op. at 63–65 (June 2, 2011) (en banc) (Wilson, J., concurring in the judgment); Wilson v. Workman, 577 F.3d 1284, 1293 (10th Cir. 2009) (en banc) ("To be entitled to deference under AEDPA, the state court must similarly decide the 'substance' of the claim, which means to 'apply the controlling legal principles to the facts bearing upon [his] constitutional claim.'" (alteration in original) (quoting Picard v. Connor, 404 U.S. 270, 277, 92 S.

---

(d) Summary Disposition. If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted. Otherwise, the court shall direct that the proceedings continue and set a date for hearing.

Rule 32.7(d) (emphasis added). Considering Rule 32.6(b) rulings as being "on the merits," therefore, creates surplusage within Alabama's statutory scheme.

84

Ct. 509 (1971))).[15]

"Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." Davis v. Wechsler, 263 U.S. 22, 24, 44 S. Ct. 13 (1923). I am concerned that many of the Rule 32.6(b) dismissals run afoul of that admonition. And because there were clear, merit-based alternative rulings for the bulk of those claims at issue in this appeal, I would rely on those rulings to satisfy AEDPA's prerequisites and avoid today's unnecessary and problematic decision regarding the status of Rule 32.6(b).[16]

---

[15] Wilson is instructive here. In that case, the full Tenth Circuit decided that prior state court adjudications of petitioners' claims were not "on the merits" because petitioners were denied evidentiary hearings under a state "procedural" rule that, while substantive, enforced a pleading burden that was unclear and different than that which would have been enforced in federal court. 577 F.3d at 1290–93. The rule enforced, Oklahoma Appellate Rule 3.11(B)(3)(b), provided for evidentiary hearings in cases where counsel was alleged to have provide ineffective assistance for failing to present mitigating evidence only if the petitioner can show "by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." The prior panel opinion, the result of which was upheld en banc, rejected an argument by the dissent that Rule 3.11 necessarily resolved the merits of the federal constitutional claim: "Although the interplay of these two standards—one more demanding, one less demanding, than the federal—is not clear, we cannot conclude that when the state court denies an evidentiary hearing under Rule 3.11 it has necessarily decided that the federal standard was not satisfied." Wilson v. Sirmons, 536 F.3d 1064, 1081 (10th Cir. 2008).

[16] For the reasons explained in my concurrence in Childers v. Floyd, — F.3d —, No. 08-15590, slip op. at 60–65 (June 2, 2011) (en banc) (Wilson, J., concurring in the judgment), I must object to the majority's footnote 42, which states that "it matters not for our analysis whether the Court of Criminal Appeals resolved Borden's claim under Strickland or under a state rule." Majority Op. at 62 n.42 (citing Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002)

2.  Summary Dispositions, Evidentiary Hearings, and AEDPA

The majority's central holding—that Borden's claims were adjudicated on their merit when the Alabama state court dismissed them for failing to meet Rule 32.6(b)'s specificity requirement—raises another important concern.

Borden was never afforded an evidentiary hearing.  The state court summarily dismissed his claims without granting him an opportunity to develop the factual record.  The majority decides that these Rule 32.6(b) dismissals were on the merits, triggering deferential review under AEDPA, because they were the substantive equivalent of dismissals under Rule 4 of the Rules Governing Section 2254 Cases (the "Habeas Rules") in federal court.  Puzzlingly, however, in applying that deference, the majority never once engages with, or even mentions, the substantive pleading burden enforced by Habeas Rule 4.  See Habeas Rule 4, advisory committee's note ("[T]he petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)).

All adjudications on the merits—including summary dismissals—are entitled to deference under AEDPA.  But not all adjudications on the merits decide the same thing.  Habeas claims may be dismissed at the pleading stage, for

---

(per curiam)).  It matters a great deal.  If the state rule enforces a different or higher burden against Borden at the pleading stage, an adjudication under that burden surely cannot be considered "on the merits" of the federal constitutional claim.

example, because, as pled, they are so "'vague (or) conclusory' as to warrant

dismissal for that reason alone," <u>Blackledge v. Allison</u>, 431 U.S. 63, 75, 97 S. Ct.

1621 (1977) (quoting <u>Machibroda v. United States</u>, 368 U.S. 487, 495, 82 S. Ct.

510 (1962)); or "when viewed against the record," they may be shown to be "so

palpably incredible, so patently frivolous or false, as to warrant summary

dismissal," <u>id.</u> at 76 (internal quotation marks omitted) (citations omitted).  If

claims survive these threshold inquiries, they may still be susceptible to summary

judgment because there remains no genuine issue of material fact to resolve in

further proceedings.  <u>Id.</u> at 80–81 (citing Fed. R. Civ. P. 56(e), (f));[17] <u>see also</u>

Alabama Rule of Criminal Procedure 32.7(d).  Alternatively, when claims are

denied at the proof stage—<u>i.e.</u> after the proceedings have run their full course—the

court has simply decided that the petitioner failed to carry his or her burden of

---

[17]

> This is not to say that every set of allegations not on its face without
> merit entitles a habeas corpus petitioner to an evidentiary hearing.
> As in civil cases generally, there exists a procedure whose purpose is
> to test whether facially adequate allegations have sufficient basis in
> fact to warrant plenary presentation of evidence.  That procedure is,
> of course, the motion for summary judgment. Upon remand the
> warden will be free to make such a notion [sic], supporting it with
> whatever proof he wishes to attach.  If he chooses to do so, [the
> petitioner] will then be required either to produce some contrary
> proof indicating that there is a genuine issue of fact to be resolved by
> the District Court or to explain his inability to provide such proof.
> Fed. Rules Civ. Proc. 56(e), (f).

431 U.S. at 80–81 (footnote omitted).

proof.

For many habeas claims, the distinctions among these different dismissals or denials at the various stages of habeas litigation are distinctions without a difference, because those claims do not require any factual development in order for the judge to conclusively evaluate the petitioner's entitlement to relief.  Other types of claims, however, are not similarly susceptible to summary proceedings. See Machibroda, 368 U.S. at 494–95 ("The factual allegations contained in the petitioner's motion . . . related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light.").  That is why federal law prohibits summary dismissals "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief . . . ."  Harris v. Nelson, 394 U.S. 286, 300, 89 S. Ct. 1082 (1969). So long as a petitioner has raised such a possibility—that, if the facts are fully developed, there is "reason to believe" that he or she "may" be able to demonstrate a constitutional violation—"it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."  Id.; see id. at 298 ("Petitioners in habeas corpus proceedings . . . are entitled to careful consideration and plenary processing of their claims including full opportunity for presentation of the

88

relevant facts."); see also Blackledge, 431 U.S. at 82 n.25 ("But before dismissing facially adequate allegations short of an evidentiary hearing, ordinarily a district judge should seek as a minimum to obtain affidavits from all persons likely to have firsthand knowledge of the existence of any plea agreement."); Franklin v. Rose, 765 F.2d 82, 85 (6th Cir. 1985) (per curiam) ("Even Franklin's undeveloped allegations satisfied the requirement of Blackledge v. Allison, that a habeas petition must 'state facts that point to a "real possibility of constitutional error."'" (citation omitted)).[18]

Federal courts reviewing § 2254 petitions must recognize exactly what federal law requires of habeas petitioners at each stage of habeas litigation. AEDPA mandates deference for all state court adjudications on the merits. But it does so in light of what is required under "clearly established Federal law." See 28 U.S.C. § 2254(d)(1) (emphasis added). Under that provision, it is our job to determine whether a state court's merits adjudication falls outside the wide range

---

[18] Our understanding of what federal law demands of habeas petitioners at the pleading stage is informed by 28 U.S.C. § 2255. The Supreme Court has looked to § 2255 and cases thereunder to map the procedural requirements of federal habeas corpus, stating that "the remedy under § 2255 was designed to be 'exactly commensurate' with the federal habeas corpus remedy." Blackledge, 431 U.S. at 74 n.4. Therefore, assuming a petition is not subject to Rule 4 dismissal, courts "must accord [a habeas petitioner] an evidentiary hearing [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. If the trial record is inadequate to show conclusively that the movant's contentions are without merit, the [habeas court] must conduct a hearing." Anderson v. United States, 948 F.2d 704, 706 (11th Cir. 1991) (internal quotation marks omitted) (footnotes omitted).

89

of objectively reasonable resolutions permissible under that clearly established federal law.  See Williams v. Taylor, 529 U.S. 362, 409–10, 120 S. Ct. 1495 (2000).  We simply cannot conduct that analysis unless we understand both what burden the state court determined the petitioner failed to carry and what federal law requires of habeas petitioners at that particular stage in the proceedings.

The majority finds Borden's allegations lacking in prejudice.  It does so by briefly comparing Borden's allegations, as pled, against the evidence of prejudice relied upon by the Supreme Court to find petitioners deserving of habeas relief on similar claims.  Majority Op. at 68–69 (citing Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527 (2003), and Rompilla v. Beard, 545 U.S. 374, 125 S. Ct. 2456 (2005)).  But the evidence of prejudice in those cases had been developed during the very proceeding Borden was denied: an evidentiary hearing.  And the state court adjudications being reviewed were decisions that the petitioners had failed to prove their entitlement to relief after full proceedings.[19]

Here, conversely, we are reviewing a pleading-stage dismissal.  And based on the majority's own authority for finding Borden's claims adjudicated on their merits, the question we must ask under § 2254(d) is whether fairminded jurists

---

[19]  I draw these distinction not to say that Borden need not make his substantial showing of a real possibility of constitutional error to obtain further proceedings, but simply to highlight that we risk over-enforcing burdens of pleading if we compare on equal footing evidence of prejudice, as pled, with the evidence of prejudice, as uncovered during an evidentiary hearing.

90

could disagree that Borden pled facts demonstrating a "real possibility of constitutional error." We are not asking whether Borden—like Wiggins and Rompilla—had actually proven his entitlement to habeas relief beyond any objectively reasonable dissent. If that were the question, the majority would surely be correct to deny relief on all counts—as would virtually any federal court reviewing the dismissal of claims naturally relying on non-record evidence at the pleading stage. Without the aid of legal process and a developed record to rely upon, it would be virtually impossible for any petitioner to carry his or her ultimate burden of proof, let alone to demonstrate that he or she is entitled to habeas relief in federal court under AEDPA's "doubly deferential" standard of review. See Pinholster, 131 S. Ct. at 1403.[20]

---

[20] The majority implies otherwise, relying on the nature of habeas fact-pleading and Alabama's requirement that Rule 32 petitioners plead "every fact" needed for their claim. See Majority Op. at 46, 49.

But federal law has long recognized that a burden of proof is often impossible to carry without the benefit of legal process, such as the ability to compel the testimony of reluctant witnesses, because habeas petitioners often do not possess all the facts they need to make out their constitutional claim:

> It is now established beyond the reach of reasonable dispute that the federal courts not only may grant evidentiary hearings to applicants, but must do so upon an appropriate showing. And this Court has emphasized, taking into account the office of the writ and the fact that the petitioner, being in custody, is usually handicapped in developing the evidence needed to support in necessary detail the facts alleged in his petition, that a habeas corpus proceeding must not be allowed to founder in a 'procedural morass.'

Harris, 394 U.S. at 291–92 (emphasis added). See also Blackledge, 431 U.S. at 83 n.26.

Moreover, federal law does not require that habeas petitioners set forth "every fact" bearing on their claims in their petitions in order avoid summary dismissal. In fact, the text of

91

Therefore, when applying § 2254(d) to summary dismissals of such claims in state court, we should not expand the already exceedingly broad sweep of AEDPA deference by enforcing the wrong burden against habeas petitioners. Instead, we must recognize the important distinctions among the different merits adjudications made at different stages in habeas litigation and review a particular state court merits adjudications in light of the decision that court actually made.

* * *

Notwithstanding these reservations, I agree with the majority that, if our view is restricted to the allegations contained in his first Amended Rule 32 Petition,[21] Borden is not entitled to federal relief on the vast majority of his claims.

---

Habeas Rule 2 in force at the time Borden made his filings specifically instructed petitioners to plead their factual case in summary form:

> (c) Form of Petition. . . . . It shall specify all the grounds for relief which are available to the petitioner and of which he has or by the exercise of reasonable diligence should have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified.

Habeas Rule 2 (effective Aug. 1, 1982) (emphasis added). See Cuadra v. Sullivan, 837 F.2d 56, 58 (2d Cir. 1988) ("Although the Habeas Rules contemplate more than the 'notice' pleading envisioned by the Federal Rules of Civil Procedure, they do not require that the petitioner plead evidentiary detail in his petition. Rather, the Habeas Rules require that the petitioner set forth facts supporting the grounds of the petition 'in summary form.'" (citations omitted)); see also Spaziano v. Singletary, 36 F.3d 1028, 1031 n.2 (11th Cir. 1994) ("Although the habeas rules require more than notice pleading, and some factual specificity will often be helpful, or even necessary, a habeas petition should not resemble a treatise.").

[21] The majority relies on Powell v. Allen, 602 F.3d 1263, 1273 (11th Cir. 2010) (per curiam), for this limitation. Majority Op. at 59. Though the relevant language in that case was uncited, I concede that, in the wake of Pinholster, its conclusion seems sound. I am troubled by the fact, however, that such a limitation essentially renders the drafting and filing of a separate federal petition a meaningless formality. For a merits review as undertaken in this case, the

This is a closer case, however, than the majority conveys.

As noted above, the majority resolves this case on Strickland's prejudice prong. When evaluating the potential prejudice of an unprofessional error at the sentencing phase of a death penalty case, a court asks "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695. To answer that question, the court "reweigh[s] the evidence in aggravation against the totality of available mitigating evidence." Wiggins, 539 U.S. at 534. Therefore, naturally, the weaker the evidence of aggravation, the less evidence of mitigation will be needed to create a "reasonable probability" that the sentencer would have struck a different balance. See Strickland, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."); Williams v. Allen, 542 F.3d 1326, 1343 (11th Cir. 2008) ("Further supporting a finding of prejudice is the fact that this case is

court would not even need to read it. This seems strangely at odds with a well-developed body of exhaustion-requirement caselaw allowing § 2254 petitioners to retool their federal allegations, so long as the substance of their claims was fairly presented to the state court. See Vasquez v. Hillery, 474 U.S. 254, 258–60, 106 S. Ct. 617 (1986); Kelley v. Sec'y for Dept. of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004) ("We recognize that habeas petitioners are permitted to clarify the arguments presented to the state courts on federal collateral review provided that those arguments remain unchanged in substance."); see also Childers, slip op. at 24 (majority opinion) ("The concept of an 'adjudication on the merits' is the corollary of the long-held requirement that a state prisoner first exhaust his claims in state court.").

93

not highly aggravated.").

Here, there was minimal evidence of aggravation. The prosecution proved only a single aggravating factor: Borden "knowingly created a great risk of death to many persons" by firing several bullets into a house. Ala. Code § 13A-5-49(3). It did so without providing any evidence that Borden actually knew there were others in the house, and by paraphrasing the aggravating standard for the jury in a way that relaxed its statutory requirements. See note 12, supra. And the jury recommended the death penalty by a vote of 10 to 2—the bare minimum allowed under Alabama law.[22]

Borden's chief complaint at issue in this appeal is that counsel was

---

[22] The majority asserts that, "In Borden's case, we must determine whether the facts pled in his Amended Petition establish that, had his counsel conducted a reasonable investigation and presented additional mitigating evidence, there is a reasonable probability that the jury would have recommended—and the judge would have imposed—a sentence of life without parole." Majority Op. at 67. The standard actually set by Strickland reads as follows: "When a defendant challenges a death sentence . . . , the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." 466 U.S. at 695 (emphasis added). Though it is a minor distinction, in the context of Alabama's capital sentencing regime, it is an important one. Strickland's rule is phrased in the negative: "the balance of aggravating and mitigating circumstances did not warrant death." Death recommendations by Alabama juries must be made by a vote of at least 10-2, whereas a recommendations of life must be made by a vote of 7-5. Ala. Code § 13A-5-46(f). Since Alabama's death penalty statute does not create a binary structure (allowing for the possibility of a hung jury) and Borden's death recommendation was 10-2, Strickland's rule would have been satisfied if Borden had changed only one juror's mind, not five. Cf. Wiggins, 539 U.S. at 537 ("Had the jury been able to place petitioner's excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance." (emphasis added)).

94

ineffective for failing to contact his treating physicians and present their testimony at the sentencing phase of trial. The majority dismisses these allegations as "boilerplate" and insufficient to establish a reasonable probability that the result of the proceeding would be different:

> We are not blind to the possibility that testimony from Borden's treating physicians at the penalty phase of his trial could have strengthened his ability to fully present the mitigating circumstances he sought to prove to the jury; while the jury had access to Borden's complete medical history and defense counsel urged the jurors to review that history, we can imagine that hearing testimony from his doctors could have provided a more in-depth view of Borden's mental state over the years. But our inquiry into Strickland prejudice requires that we find more than a possibility that the jury could have benefitted from additional testimony that would shed light on evidence already produced for their review.

Majority Op. at 73.

But "the Strickland [prejudice] inquiry requires [a] . . . probing and fact-specific analysis." Sears, 130 S. Ct. at 3266. Had such an inquiry been conducted here, in light of the trial record in this case, I believe Borden may have raised a real possibility of constitutional error.[23]

---

[23] This specific allegation of error is one of those for which the Criminal Court of Appeals's opinion contains no clear merit-based alternative ruling to its Rule 32.6(b) determination. Borden made this allegation alongside others claiming counsel was ineffective for not calling medical experts to testify at the penalty phase of trial. Faulting Borden for failing to "identify what type of mental health expert he believed should have been presented at the sentencing phase, or how that expert's testimony would have differed from the testimony presented at the guilt phase," the court affirmed the trial court's dismissal for lack of specificity.

First of all, I cannot agree with the majority's characterization that testimony from Borden's treating physicians would have merely cast additional light on evidence already produced for the jury's review. There were over 1,100 pages of photocopied medical records submitted, in bulk, as evidence. I have reviewed a number of these records, and it is impossible to believe that, in the hour they deliberated, these lay jurors would have been able to read and digest this information in any way that would have even <u>begun</u> to stand-in for professional summary and analysis. Second, counsel made no attempt—other than a passing request that the jurors review the medical records—to apply the guilt-phase mental-health evidence to the demonstrably lower burden of mental-health mitigation at the penalty phase. <u>See</u> <u>Bell v. Cone</u>, 535 U.S. 685, 706–08 n.4, 122 S. Ct. 1843 (2002) (Stevens, J., dissenting) ("It is true that the jury was instructed to consider mitigation from the guilt phase, and also true that [counsel]'s brief penalty phase opening referenced the mental health evidence from the guilt phase, but the jury's whole view of that testimony was influenced by its relation to the debunked insanity defense."). Third, and most importantly, testimony from

CCA Op. at 26. But the ruling was completely non-responsive to Borden's claim that his attorneys failed to present testimony from any of his prior "mental health care providers." <u>See</u> Amended Petition ¶ 66. Had the majority avoided its categorical treatment of Rule 32.6(b), I believe this is one of the rulings that would have been difficult to categorize as truly "on the merits" of the federal constitutional question. Consequently, I dissent from the majority's affirmance of the district court's denial of this claim, and I would remand it to the district court for <u>de novo</u> review and further factual development.

96

Borden's physicians would have rebutted a powerful and pervasive attack leveled at Borden's mental-health strategy throughout the entire trial.

The prosecution tirelessly attacked Borden's affirmative guilt-phase defense, claiming he was "faking" and that his alleged mental health problems were an "excuse." On cross-examination of both medical experts (neither of whom were among Borden's treating physicians), the prosecution repeatedly inquired if their tests contained any controls for faking, or what objective proof one could obtain for psychological complaints such as hallucinations. At closing argument, this concerted strategy culminated in a powerful indictment of Borden's mental-health defense:

> And if there was a serious attempt here, folks, to give you the big picture and all the information, we're missing somebody, aren't we? The defendant's mother said that in the year 1993 leading up to these shootings that nobody, nobody, knew the defendant's condition better than Dr. Shehi.[24] Where is he? Have you seen him?
>
> . . .
>
> And don't you think you've got a right to expect if they want to prove something to you, they're going to bring the person who according to the defendant's own mother knows more about him than anything [sic] else? And they chose not to. And I think you can infer from that why.

---

[24] Dr. Shehi was the physician treating Borden just before the incident. Borden's mother testified that Dr. Shehi was more familiar with Borden's state of mind during the relevant time period than any other person.

The jury subsequently rejected Borden's affirmative defense and convicted him of capital murder.

In light of the picture painted by the trial transcript, if Borden's counsel truly failed to even <u>contact</u> most of Borden's treating physicians, I am not convinced that this unprofessional oversight would have created only a "possibility that the jury could have benefitted from additional testimony that would shed light on evidence already produced for their review." Majority Op. at 73. Their testimony was likely the only evidence that could have meaningfully countered the prosecution strategy—a strategy that clearly prevailed at the guilt stage. <u>See</u> <u>Rompilla</u>, 545 U.S. at 385–86 (finding counsel provided ineffective assistance for failing to uncover evidence that counsel knew the prosecution would put at issue, despite the fact that counsel had conducted a largely extensive background investigation).

Had the factual record been developed, despite the clear inadequacy of most of his other allegations, Borden may still have ultimately proven his entitlement to relief on this claim. Unfortunately, there is no way to be sure; he was never afforded the opportunity.[25]

---

[25] I also dissent from the majority's affirmance of the district court's denial of Borden's claim that counsel was ineffective for failing to investigate and present evidence of Borden's significant religious activities. Specifically, Borden contended that he was deeply religious, and that he and his wife were so active in their church that the pastor asked them to establish their

98

Because of the unique severity and finality of the punishment, we have always aspired to a higher degree of factual reliability in proceedings leading to a prisoner's execution. See Brownlee v. Haley, 306 F.3d 1043, 1070 (11th Cir. 2002) ("[T]he Supreme Court and this Court . . . have repeatedly emphasized the constitutional right of a defendant facing the death penalty to present any relevant

own congregation. Borden asserts that his religious activities constituted an additional mitigating factor that would have counseled the jury against voting for the death penalty.

The trial court found this claim sufficiently pleaded, but denied it on a summary judgment basis. The Alabama Court of Criminal Appeals affirmed, stating:

> Although we cannot say, based on the record before us, that trial counsel knew about Borden's religious activities and made a decision not to present them, we agree with the trial court that presentation of the evidence could have severely damaged the defense theory. As such, the trial court correctly determined that Borden could not establish that counsel's failure to present evidence of his religious activities constituted deficient performance. Borden also could not establish that the failure to present evidence of the religious activities resulted in prejudice to his defense. There is no reasonable probability that, had the evidence been presented, Borden would not have been sentenced to death. Therefore, no material issue of law or fact existed and the trial court correctly dismissed the claim.

CCA Op. at 38.

But under federal law, summary judgment denying Borden the opportunity to present evidence on a sufficiently pleaded claim is proper only when the record conclusively shows that the petitioner is not entitled to relief. Though it is possible—perhaps even likely—that, if developed, Borden's purported evidence of mitigation would have done violence to his mental-health strategy or failed to rise to provide sufficient prejudice under Strickland, it is entirely possible that it would have not. Given this ambiguity, summary judgment was entirely inappropriate. See note 18, supra; 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); Fontaine v. United States, 411 U.S. 213, 215, 93 S. Ct. 1461 (1973) ("On this record, we cannot conclude with the assurance required by the statutory standard 'conclusively show' that under no circumstances could the petitioner establish facts warranting relief under § 2255; accordingly, we vacate the judgment of the Court of Appeals and remand to that court to the end that the petitioner be afforded a hearing on his petition in the District Court." (emphasis added)); Anderson, 948 F.2d at 706.

evidence of mitigating circumstances. In Lockett v. Ohio, the Supreme Court explained that the 'qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed,' . . . ." (citation omitted)). Perhaps that is why prisoners facing death sentences are almost never denied even a single post-conviction hearing on their alleged constitutional claims.

The majority decides this case on Strickland prejudice—an inquiry that tests our confidence in a conviction or a sentence. See Cave v. Sec'y for Dept. of Corr., 638 F.3d 739, 748 (11th Cir. 2011). And on the underdeveloped record in this case, I cannot say with complete confidence that this sentence of death was untainted by constitutional error. But under AEDPA, it is no longer this Court's task to evaluate the constitutional sufficiency of Borden's counsel directly. Rather, we determine if the Alabama Court of Criminal Appeals was objectively unreasonable in evaluating the same. See Pinholster, 131 S. Ct. at 1402 n.12; Richter, 131 S. Ct. at 788. Under that deferential standard of review, and with the exception of the two claims addressed in footnotes 23 and 25, I concur in the result reached by the majority.